

PLAINTIFF'S EXHIBIT 4

Membership    News & Publications    Professional Development    Economics & Practice    Advocacy    Meetings & Events    About AVMA    Policy

You are here: Home | Professional Development | Education | Foreign     PRINT    SHA

**About Us**
**News**
**FAQs**
**Contacts**
**Program Steps**
  Enrollment Application/Online Status
  English Language Requirement
  BCSE Candidate Bulletin
  CPE Candidate Bulletin
**Policies & Procedures**
  AVMA-Listed Veterinary Colleges
  Processing Times
  Appeals
  Complaints
  Release of Information
  Canadian NEB
**Related resources**
  Classification of Colleges
  Veterinary Medical Degrees Granted Throughout the World

# ECFVG - Clinical Proficiency Examination Candidate Bulletin



Building a bridge to your future in veterinary medicine — ECFVG

Updated November 2017

## Table of Contents

Introduction to the Clinical Proficiency Examination
CPE Format
CPE Common Diagnoses
CPE Sites and Schedule
ECFVG Program Steps and CPE Eligibility
Fees for the Full CPE
Application Process for the Full CPE
Scoring the CPE
Passing Standard and Score Reporting
Extended Score Reports to Candidates
CPE Retakes and Associated Fees
Application Process for Retaking Failed CPE Sections
Rescheduling a Full CPE or Retake Sections
CPE Testing Accommodations
CPE Rules of Conduct
Score Validity
Limitation of Liability
Appeals and Complaints
Contacts
Appendix 1-Requirements for Sites Providing The CPE
Appendix 2-Quality Assurance for the CPE Site
Appendix 3-ECFVG Policy on Testing Accommodations

## Introduction to the Clinical Proficiency Examination

The Clinical Proficiency Examination (CPE) has been developed by the American Veterinary Medical Association (AVMA) Educational Commission for Foreign Veterinary Graduates (ECFVG) and the Canadian Veterinary Medical Association (CVMA) National Examining Board (NEB) as the fourth step in assessing educational equivalency for purposes of ECFVG or NEB certification, respectively. It is intended to assess the practical clinical veterinary skills of an "entry-level" veterinarian.

The hands-on, performance based CPE is a 3-day, 7-section, clinical skills examination, administered by the faculty of a college of veterinary medicine or other authorized testing institution. The skill and knowledge level expected to receive a passing score on each section of the CPE is that of an entry-level US or Canadian veterinarian (ie, new graduate of an AVMA/Council on Education-accredited veterinary school).

The CPE assesses a subset of the entry-level clinical veterinary skills taught in an AVMA/Council of Education veterinary school. All candidates taking the CPE are encouraged to critically consider whether the education they received is sufficient to provide them with the necessary skill level to perform at a passing level on the CPE. For example, to succeed in the surgery and anesthesia sections of CPE, candidates will need not only to have knowledge about performing surgery and anesthesia, but they should also have experience performing small-animal surgery and anesthesia in an instructional or clinical setting prior to attempting the CPE.

A candidate preparing to take the CPE should have clinical experience and basic animal handling/husbandry skills working with the species used in this exam. Most emphasis is placed on the dog, cat, horse, and cow with a lesser emphasis on goats, sheep, and pigs. Candidates are advised to focus on these species. A candidate lacking in experience working with any of these species should seek this experience before taking the examination.

Although experience gained from reading material and viewing videotapes, DVDs, CDs, PowerPoints, etc, is helpful in preparing for the CPE, the candidate must not consider these to be a substitute for the "hands-on" clinical instructional experience outlined above.

Communication skills and service to clients are a high priority in veterinary practice in the United States and Canada. Throughout the CPE candidates will be expected to communicate clearly and effectively with a client (role played by the examiner) in order to take an accurate history, and to communicate information to the client including clinical findings, diagnostic plans, test results and interpretation, therapeutic options, and prognosis. Other sections will require the candidate to explain findings to the examiner directly. Lack of adequate entry-level communication skills in English (or French at the Université de Montréal, St. Hyacinthe for NEB purposes only) will negatively impact a candidate's performance on the CPE.

Although only well-prepared candidates will be able to pass the CPE, no candidate is expected to obtain a perfect score on the seven sections of the CPE. However, in the opinion of the ECFVG and NEB, every candidate should have considerable familiarity and entry-level experience with the skills and knowledge to be assessed in each section of the CPE.

All ECFVG candidates are **strongly encouraged** to read this entire Candidate Bulletin, which is designed to ensure complete familiarity with application and scheduling procedures (including accommodation requests), examination fees, security and test behavior expectations, and score reporting for the CPE. If questions remain after reading the Candidate Bulletin in its entirety, please contact the ECFVG Testing Coordinator at ECFVG or 800-248-2862, ext 6682.

In addition, policy and schedule changes impacting candidates taking the CPE may occur at any time. It is the **candidate's responsibility** to monitor the ECFVG Web site for information about ECFVG program policies and changes.

## CPE Format

The seven sections of the CPE include: anesthesia (canine), equine practice, food animal practice, necropsy, radiographic positioning (small animal), small animal medicine, and surgery (canine ovariohysterectomy). The CPE *Manual of Administration* (MOA) describes specific sections and skills to be assessed and serves as the guide for administering the CPE to all candidates. All sites offering the CPE must adhere to the standards set forth in the *MOA* and two other quality assurance documents (Appendix 1 and Appendix 2).

ECFVG candidates have access to the current MOA online. The MOA is updated on a yearly basis and it is the candidates' responsibility to ensure that they have the most up-to-date MOA. Candidates are urged to carefully read this MOA and understand the skill requirements of the CPE prior to completing their CPE application. After having done this, each candidate will be able to critically self-assess his/her competencies to determine those areas of weakness that require further training/education. If further training/education is required, the support and expertise of a veterinary mentor is strongly recommended prior to scheduling and attempting the CPE.

## CPE Common Diagnoses

The CPE is a test of "entry-level skills." Therefore, cases/conditions selected for inclusion on the examination should be common conditions with which the new graduate of an AVMA-accredited school should be familiar. The ECFVG maintains an example list of common diagnoses, however, candidates must realize that this list is not exhaustive and that there is no requirement that the CPE be limited to the diagnoses and conditions on this list.

## CPE Sites and Schedule

The ECFVG administers the CPE in cooperation with approved sites. The approval process, which is rigorous and ongoing, is outlined in Appendix 2.

In 2017, the following two sites will administer the CPE for the AVMA/ECFVG:

- Mississippi State University College of Veterinary Medicine (Starkville, MS)
- Western Veterinary Conference Oquendo Center (Las Vegas, NV)

2

Candidates who complete any portion of their clinical education (pre- or post-graduation) at an AVMA-accredited veterinary college cannot take the CPE administered at that college. Candidates are not permitted to take examinations at the same site which they were a resident or an intern, or an employee or former employee of that site or school/college.

Candidates may take the CPE at a site at which they took Continuing Education (CE) courses, provided that candidates are not tested by the same individual(s) who provided the training. Also, training must have taken place at least six months prior to examination at same site.

The CPE is administered multiple times each year, at one or more of the above sites. All sites administer retake sections as well, although not all sections are offered as retakes by all sites.

After a candidate's CPE application is processed and a testing date is assigned, the candidate will receive a confirmation letter, which will contain information (eg, test site and date(s), nearby airport/driving directions, and lodging information) to allow the candidate to make travel arrangements. Expenses related to travelling to, and staying at, the CPE site are the responsibility of the candidate. Approximately two weeks prior to the assigned CPE date(s), CPE site personnel will send the candidate more detailed information regarding his/her on-site examination schedule.

## ECFVG Program Steps and CPE Eligibility

The ECFVG certification program includes the following four steps:

- Step 1: Enrollment in the ECFVG program and proof of graduation from a non-AVMA/Council on Education accredited veterinary school or college
- Step 2: Demonstration of English language competency
- Step 3: Assessment of basic and clinical sciences knowledge
- Step 4: Assessment of hands-on clinical veterinary skills

Candidates must recognize that enrollment into the ECFVG program does not automatically result in application for the CPE. To be eligible to apply for the CPE (ECFVG Step 4), a candidate must first register in the certification program and complete ECFVG Step 1 (verification of graduation); complete ECFVG Step 2 (English language assessment); and complete ECFVG Step 3 (BCSE; assessment of basic and clinical sciences knowledge). Please note that Step 1 is considered complete only after the ECFVG office has received and accepted the "certification of graduation" form from the candidate's veterinary college administration as well as appropriate copies of the candidate's veterinary college diploma and final transcripts.

In addition, candidates who enroll into the ECFVG program on or after July 1, 2014, must submit validated **Surgical Experience Documentation** forms as proof of having performed, in the five-year period prior to date of CPE, at least one (1) ovariohysterectomy as the primary surgeon and at least five (5) additional surgical procedures as either the primary or the assistant surgeon. The 5 additional procedures may be ovariohysterectomies or other surgical procedures, but each documented surgery should involve all elements of an aseptic surgical procedure, including gowning & gloving, draping of the patient, and use of sterile instrumentation. Validation of surgery experience can be provided by **one or more veterinarians licensed to practice veterinary medicine in any international jurisdiction**. Please note that, candidates who enrolled into the ECFVG program on or after July 1, 2014, will be eligible to register for the full CPE only when the required documentation is received in its entirety in the ECFVG office and processed by ECFVG staff. The ECFVG reserves the right to verify the documents received. Candidates are reminded that falsification of documents would be a violation of the Rules of Conduct and can resolve in disciplinary actions up to and including dismissal from the program. Candidates who successfully fulfill this eligibility requirement will be notified of their Step 4 eligibility by e-mail and will be able to register and apply for CPE through ECFVG Online.

This CPE eligibility requirement does not apply to candidates enrolled in the ECFVG program prior to July 1, 2014. However, the ECFVG strongly recommends that all candidates have the experience described above prior to attempting the surgical section of the CPE.

## Fees for the Full CPE

All fees for the CPE are non-refundable and non-transferable. Currently, the entire CPE fee is forwarded to the site administering the CPE to defray costs associated with the examination. Beginning on January 1, 2017, a $200 administrative fee will be collected to defray costs associated with examination scheduling and administration. In addition for CPE's conducted after July 1, 2017 and January 1, 2018, the CPE fee will increase by $200, respectively. After January 1, 2019 and 2020, the CPE fee will increase by $215; respectively.

For CPEs administered from 2017 - 2020, the following full CPE expense structure will apply:

- 2017 administrations after July 1: $7,000 (USD); ($6,800 CPE Application fee + $200 Administrative fee)
- 2018 administrations after January 1: $7,200 (USD); ($7,000 CPE Application fee + $200 Administrative fee)
- 2019 administrations after January 1: $7,415 (USD); ($7,215 CPE Application fee + $200 Administrative fee)
- 2020 administrations after January 1: $7,630 (USD); ($7,430 CPE Application fee + $200 Administrative fee)

Candidates who initially registered in the ECFVG certification program on/after January 1, 2006 have already paid a one-time Quality Assurance Program (QAP) fee of $725 and will not be required to pay any additional QAP fee when applying for the CPE. Candidates who initially registered in the ECFVG certification program before January 1, 2006 will be required to pay a one-time QAP fee of $725 when scheduling their CPE. Additional details regarding the fee structure for the full CPE are provided below. Contact the ECFVG office (ECFVG; 800-248-2862, ext 6682) with any questions.

The following payment schedule for the full CPE applies:

1. For candidates who initially registered in the ECFVG certification program on/after January 1, 2006:
    - A $1,000 CPE fee deposit must be submitted when completing the application through ECFVG Online.
    - The remaining balance is due 60 days prior to examination
2. For candidates who initially registered in the ECFVG certification program prior to January 1, 2006:
    - A $1,725 combined CPE fee deposit ($1,000) and one-time QAP fee ($725) must be submitted when completing the application through ECFVG Online. The QAP is restricted to fund processes that ensure and enhance quality of the ECFVG certification program.
    - The remaining CPE fee balance is due 60 days prior to examination

The final balance must be sent (post-marked) to the AVMA/ECFVG no later than 60 days prior to the scheduled exam. Final payment must be in the form of a cashier's check or money order made payable to the AVMA. Failure to pay this balance by the required deadline will result in forfeiture of all fees and loss of the reserved examination space.

**PLEASE NOTE:** CPE fees and adminstrative fees (full or retake) cannot be refunded if the candidate fails to receive a visa or other required travel documentation to allow travel to the CPE site. Candidates are responsible for ensuring all documents permitting travel are in place prior to submitting any non-refundable/non-transferable fee. Please also make sure all other CPE policies both in this Bulletin (eg, rescheduling) and in the *ECFVG Policies and Procedures Manual (eg, Canadian NEB)* are understood before requesting or submitting a CPE application, because all fees are non-refundable and non-transferable. Please contact the Testing Coordinator (ECFVG; 800-248-2862, ext 6682) if you have any questions regarding these policies.

## Application Process for the Full CPE

CPE- eligible candidates must complete the CPE application through ECFVG Online and submit the appropriate fee (as indicated in the Fees for the Full CPE section of this Bulletin) by credit card at the end of the application or in the form of a cashier's check or money order (non-refundable/non-transferable) payable to the AVMA. Candidates requesting testing accommodations must indicate this on the application and also submit the CPE Test Accommodation Request Form at this time (please refer to Appendix 3 of this Bulletin for complete information regarding accommodations requests).

**PLEASE NOTE:** candidates who complete any portion of their clinical education (pre- or post-graduation) at an AVMA-accredited veterinary college cannot take the CPE administered at that college. Candidates are not permitted to take examinations at the same site which they were a resident or an intern, or an employee or former employee of that site or school/college.

Candidates may take the CPE at a site at which they took Continuing Education (CE) courses, provided that candidates are not tested by the same individual(s) who provided the training. Also, training must have taken place at least six months prior to examination at same site.

Candidates have access to the current CPE *Manual of Administration* (MOA) online. The MOA provides candidates with detailed information regarding skills to be assessed during the CPE. Candidates are urged to carefully read the MOA and understand the skill requirements of the CPE. After having done this, each candidate will be able to critically self-assess his/her competencies to determine those areas of weakness that require further training/education. If further training/education is required, the support and expertise of a veterinary mentor is strongly recommended prior to scheduling and attempting the CPE.

After the candidate's application is processed, a confirmation letter will be sent via e-mail, confirming the date and location of the scheduled CPE. Examination dates are assigned on a first-come/first-serve basis.

**PLEASE NOTE:** CPE fees and adminstrative fees cannot be refunded if you fail to receive a visa or other required travel documentation to allow travel to the CPE site. Make sure all documents permitting travel are in place prior to submitting your non-refundable/non-transferable fees. Please also make sure all other CPE policies both in this Bulletin (eg, rescheduling) and in the ECFVG Policies and Procedures Manual (eg, Canadian NEB) are understood before requesting or submitting a CPE application, because all fees are non-refundable and non-transferable. Please contact the Testing Coordinator (ECFVG; 800-248-2862, ext 6682) if you have any questions regarding these policies.

## Scoring the CPE

For each of the seven sections of the examination, specific grading rubrics are published in the CPE *Manual of Administration* (MOA).

The MOA specifies the knowledge and technical skills (globally referred to as clinical proficiency skills) that will be asked during the examination. Examiners will assess each candidate's knowledge and technical skills by direct observation, and in some

4

cases, will assess their written descriptions of findings or conclusions.

The term "efficiency" is an element in some of the assessments. Efficiency is a component of competency. Candidates are to be assessed on their timeliness and effective use of resources to complete a procedure. A candidate who, in the judgment of the examiner, requires an unreasonable amount of time to the extent that the outcome of the procedure is jeopardized will be penalized. The penalty for this type of assistance will be reflected in the number of points assigned to the particular clinical skill. A candidate who cannot complete a skill or set of skills in the maximum time allowed will be penalized and may receive no points for a given station or section.

Communication skills and service to clients form a high priority in veterinary practice in the United States. Throughout the CPE, there are frequent requirements of the candidate to communicate with a client (role-played by the examiner). This occurs most often during history taking and communicating a clinical message to a client. Throughout the CPE the candidate must be able to demonstrate the ability to take a history from a client by asking appropriate questions. Lack of adequate entry-level communication skills in English will negatively impact a candidate's performance on the CPE.

Further, if a candidate compromises his/her personal safety or the safety of personnel while working around animals during the course of the CPE (eg, too close to the rear legs of a horse), the examiner will intervene, may terminate the procedure and will assign a penalty that will be reflected in the number of points assigned to the particular skill. The section may also be scored as unsatisfactory (fail) depending on the nature of the safety violation(s).

The examiner will also assist an animal and terminate the section if a candidate by an act of omission or commission puts an animal into an inhumane or life-threatening situation and the situation is not corrected by the candidate. The section will be scored as unsatisfactory (fail) regardless of the score accumulated at the point of termination.

## Passing Standard and Score Reporting

The skill level to pass each section of the CPE is that expected of a minimally competent new graduate of an AVMA/Council on Education-accredited veterinary school. This passing standard corresponds with a minimum score of 60 points (out of a total of 100) for all sections except anesthesia and surgery, both of which are scored as "pass" (at least minimally competent) or "fail." A score of 60 points or greater or a "pass" in each of the 7 sections of the CPE is required in order to pass the entire examination.

Score reports (stating pass or fail only for each section) will be reported by the ECFVG via e-mail and through ECFVG Online. Scores will be released no more than twenty (20) business days following the final day of any given CPE administration. Scores **CANNOT** be released via fax or telephone. To ensure timeliness in delivery of score reports, it is essential that candidates update contact information immediately through ECFVG Online or by e-mailing or faxing the ECFVG office (ECFVG; 847-285-5732).

## Extended Score Reports to Candidates

An unsuccessful candidate may request an extended but standardized score report of failed section(s) from the office of administration (ie, ECFVG or NEB offices). The report will identify major areas in which the candidate has demonstrated a deficit of knowledge and/or technical proficiency. As such, the purpose of the report is to aid that candidate in preparation for a career in veterinary medicine rather than helping the candidate pass a limited number of skills on the CPE. Requests for extended score reports must be received within two weeks (14 days) of distribution of the candidate's CPE score report. Candidates intending to file an appeal of a failing score must request an extended score report within 14 days of the score notification and before initiating the ECFVG Appeal Process. ECFVG candidates must request the extended score report via E-mail to ECFVG@avma.org. The extended score report will then be returned to the candidate via E-mail within 10-15 business days of receipt of the request. **Candidates may only request extended score reports from the ECFVG office (or the NEB office for CPEs administered in Canada) and are prohibited from asking examiners for feedback or for more details of their failure during or after completion of the CPE.**

## CPE Retakes and Associated Fees

A candidate with a "fail" in four or more sections of the examination must retake the entire examination by repeating the application process for the full CPE and paying all associated CPE fees and adminstrative fees (no additional QAP fees will be required for all candidates including those candidates who initially enrolled into the ECFVG program prior to January 1, 2006).

A candidate with a "fail" in one, two, or three sections is allowed two additional opportunities to retake and successfully pass the failed sections as long as the candidate applies for retakes within six months of each failure and accepts one of the first available retakes offered. Failure to successfully pass the retake sections within these two attempts or failure to accept one of the first available retakes will necessitate the candidate retaking the entire CPE.

For retakes administered in 2016, and 2017, the following retake expense structure will apply:

- 2016 administrations: $1,400 (USD) per section

- 2017 administrations: $1,450 (USD) per section ($1,400 CPE Application fee + $50 Adminstrative fee)

5

Other than the adminstrative fee, all retake fees are forwarded to the CPE site administering the retake sections to defray costs associated with the examination. All fees to retake failed sections of the CPE are also non-refundable and non-transferable.

**PLEASE NOTE:** CPE fees and adminstrative fees cannot be refunded if you fail to receive a visa or other required travel documentation to allow travel to the CPE site. Please also make sure all other CPE policies both in this Bulletin (eg, rescheduling) and in the ECFVG Policies and Procedures Manual (eg, Canadian NEB) are understood before requesting or submitting a CPE application, because all fees are non-refundable and non-transferable. Please contact the Testing Coordinator (ECFVG; 800-248-2862, ext 6682) if you have any questions regarding these policies.

## Application Process for Retaking Failed CPE Sections

Candidates retaking one or more sections must complete the CPE retake application through ECFVG Online and submit a total payment of $1,450 per section (non-refundable/non-transferable) by credit card at the end of the online application or in the form of a cashier's check or money order made payable to AVMA.

**PLEASE NOTE:** CPE fees and adminstrative fees cannot be refunded if you fail to receive a visa or other required travel documentation to allow travel to the CPE site. Make sure all documents permitting travel are in place prior to submitting your non-refundable/non-transferable fees. Please also make sure all other CPE policies both in this Bulletin (eg, rescheduling) and in the ECFVG Policies and Procedures Manual (eg, Canadian NEB) are understood before requesting or submitting a CPE application, because all fees are non-refundable and non-transferable. Please contact the Testing Coordinator (ECFVG; 800-248-2862, ext 6682) if you have any questions regarding these policies.

## Rescheduling a Full CPE or Retake Sections

Candidate who request to reschedule a confirmed CPE date (full or retake sections) in the event of emergencies and unforeseen situations (such as a medical condition pertaining to the candidate or a death in the immediate family) may do so without expectation of a refund. All fees are non-refundable. If given sufficient notice, the ECFVG will try to fill that vacated CPE date. Only if the vacated CPE date is filled by another paid candidate, the original candidate's fees will be transferred to his/her rescheduled CPE date. Requests to reschedule a confirmed CPE date must be submitted as soon as possible in writing to the ECFVG Testing Coordinator at ecfvg@avma.org. However, fees will not be refunded and may only be transferred if the ECFVG will succeed in finding another candidate to fill the vacated CPE dates.

## CPE Testing Accommodations

In accordance with the Americans with Disabilities Act and other applicable laws, the AVMA/ ECFVG provides equal opportunities for access to programs and services for individuals with documented disabilities. Completed accommodation requests with all necessary documentation *must* be submitted immediately following the completion of the CPE application and must provide the ECFVG with sufficient time (at least 90 days before the first day of the preferred CPE administration) to review the accommodation request and reach a decision. CPE Accommodations Request Form

The ECFVG Policy on Testing Accommodations (see Appendix 3 in this Candidate Bulletin) provides individuals, schools, professional diagnosticians, and service providers with information regarding how to document a disability and a related need for accommodations for candidates for the CPE. The information and documentation submitted should be as comprehensive as possible in order to allow the ECFVG to make an informed decision on the accommodation request and to avoid time delays in the decision-making process.

## CPE Rules of Conduct

The ECFVG has established Rules of Conduct to govern administration of the CPE to ensure that no examinee or group of examinees receives unfair advantage on the examination, inadvertently or otherwise.

If there is a reason to believe that the integrity of the examination process is jeopardized, the ECFVG may invalidate all or any part of a CPE administration. If information indicates that continued testing would jeopardize the security of examination materials or the integrity of scores, the ECFVG reserves the right to suspend or cancel any CPE administration.

CPE site team members (ie, coordinators, examiners, technicians, and assistants) monitor all sections of the CPE. If CPE site team members observe a candidate violating the Rules of Conduct or engaging in other forms of irregular behavior during a CPE, the team members will not necessarily advise the candidate at the time of the examination, but shall report such incidents to the ECFVG. Each report shall be fully investigated.

By applying to take the CPE, a candidate agrees to the following Rules of Conduct:

- You are the person named on the CPE application.

- You will place in a locker or cubicle or other designated area all personal belongings, including cellular telephones, watches with computer communication and/or memory capability, pagers, personal digital assistants (PDAs), formulas, study materials, notes, papers, and your purse or wallet, before you enter the secure testing areas.
- You will not use a telephone at any time while you are in the secure areas.
- You will not give, receive, or obtain any form of unauthorized assistance during the testing session, including any breaks.
- You will not have in your possession any formulas, study materials, notes, papers, or electronic devices of any kind unless you are out of the secure testing areas of the CPE site.
- You will not remove materials in any form (written, printed, recorded, or any other type) from the secure testing area unless instructed to do so by the examiners.
- You understand and acknowledge that all examination materials remain the property of the CPE site and ECFVG, and you will maintain the confidentiality of the case content for all sections of the CPE. You will not reproduce or attempt to reproduce examination materials through memorization or any other means, nor will you provide information relating to examination content that may give or attempt to give unfair advantage to individuals who may be taking the examination, including, without limitation, by posting information regarding examination content on the Internet.

Unless specifically authorized, candidates may not bring personal belongings into secure testing areas of the CPE site. Failure to follow these rules shall constitute a violation of the Rules of Conduct for the administration of the CPE and may lead to adverse action regarding a candidate's examination. For the CPE, candidates should understand that the entire testing session over the 3-day testing period, including all breaks, is considered a closed and secure testing session, and that the entire CPE site, including any on-site lunch room, break rooms, and restrooms, is a secure testing area. Therefore the rules regarding unauthorized possession during the CPE extend to lunch, if lunch is provided on site, and all breaks.

For the CPE, unauthorized personal belongings include, but are not limited to:

- mechanical or electronic devices other than simple calculators, such as cellular telephones, personal digital assistants (PDAs), watches with computer communication and/or memory capability, electronic paging devices, recording or filming devices, radios;
- outerwear, such as coats, jackets, head wear, gloves;
- book bags, backpacks, handbags, briefcases, wallets; and
- books, notes, study materials, or scratch paper.

If candidates bring any personal belongings to the CPE site, they must store them in a designated locker or storage cubicle or other designated area as directed by the CPE site team. All stored mechanical or electronic devices must be turned off. Upon reasonable suspicion, a candidate's personal belongings and their contents may be inspected. Any materials that reasonably appear to be reproductions of any case material specific for the CPE administration in which a candidate is participating will be confiscated. Making notes of any kind during the CPE, except on the materials provided by the CPE site for this purpose, is not permitted. If candidates have any questions regarding the appropriateness of personal belongings to be brought into the CPE site, contact the ECFVG or a CPE site team member prior to admission.

*Admission to the CPE*—When candidates arrive at the CPE site for orientation and check in, they must present a photo ID with signature. Acceptable forms of identification include the following forms of unexpired identification:

- passport;
- driver's license;
- national identity card; or
- other form of unexpired, government-issued identification.

The identification must contain both the candidate's signature and photograph. If a candidate does not bring acceptable identification, he/she will not be admitted to the CPE. In that event, the candidate will be required to reschedule the CPE in accordance with current ECFVG policy. The candidate's name as it appears on his/her CPE application must match the name on the form(s) of identification exactly. If a candidate's name listed on his/her CPE application is not correct, contact the ECFVG office immediately at ECFVG, or by phone at 800-248-2862, ext 6682 or 6778.

*Test Centers and Testing Conditions*—The time and location for arrival at the CPE site for orientation and check in will be sent to each candidate by e-mail prior to the administration of the examination. If a candidate arrives late, he/she will not be admitted, and will have to reschedule the test date in accordance with current ECFVG policy.

At the time of check-in, candidates will be required to present unexpired identification. Prior to beginning each day of the examination, candidates will be directed to a small storage cubicle or locker or other designated area in which they must place personal belongings. These cubicles may not be secure, so do not bring valuables.

In addition, candidates should please note the following:

- You should bring only the equipment specified for each section within the CPE Manual of Administration; all other equipment is provided at the CPE
- You should wear comfortable, professional clothing.
- There are no waiting facilities for family and friends at the center; plan to meet them elsewhere after the examination ends.

7

- CPE site team members (wearing name tags) will direct you throughout each day of the CPE, and their instructions should be followed at all times.
- There will be an on-site orientation to each section of the CPE to acquaint candidates with specific procedures and regulations.

Once candidates enter the secure testing area of the CPE site, they may not leave that area until directed to do so by a member of the CPE site team. Breaks, including a lunch break, are provided. CPE site team members will direct candidates to any on-site break and lunch rooms. Candidates may not discuss the cases with fellow examinees at any time, and conversation among examinees in any language other than English is prohibited at all times. CPE site team members will monitor all examinee activity. See "Irregular Behavior" below.

CPE site team members are not authorized to answer questions from examinees regarding examination content or scoring.

Should a candidate wish to file a concern regarding the CPE testing experience, he/she may do so at the site on the test day(s). If a candidate does not file a report at the site, he/she must notify the ECFVG office in writing within three weeks of the final day of the administration of the CPE. Concerns that are reported in this way will be investigated in accordance with the current ECFVG Complaints Procedure.

**NOTE: Visitors as approved by the ECFVG, may, on some occasions, be observing a CPE in progress. Other than site evaluators, they will be given no information regarding examinee identity or performance and will have no interaction with examinees.**

*Irregular Behavior*—Irregular behavior consists of any action by CPE candidates or others that subverts or attempts to subvert the examination process, including, without limitation:

- Falsification of information on the application form, including additional documentation, or failure to provide the ECFVG with information material to your application.
- Impersonating an examinee or engaging someone else to take the examination for you
- Giving, receiving, or obtaining unauthorized assistance during the examination, or attempting to do so.
- Unauthorized possession, reproduction, or disclosure of any materials, including, but not limited to, examination cases, before, during, or after the examination.
- Making notes of any kind during an examination except on the writing materials provided by the CPE for that purpose.
- Disruptive or unprofessional behavior at a CPE site.
- Offering any benefit to any CPE site team member or agent of the ECFVG in return for any right, privilege, or benefit which is not usually granted by the ECFVG to other similarly situated candidates.

**NOTE: Talking to another examinee during the examination may be reported as evidence of giving, receiving, or obtaining unauthorized assistance.**

If a candidate is determined to have failed to abide by the Rules of Conduct of the ECFVG or otherwise to have engaged in any form of irregular behavior, the ECFVG may terminate the candidate's participation in an examination, invalidate the results of an examination, withhold or revoke the candidate's scores or certification, bar the candidate's participation in future examinations, and/or take other appropriate adverse action. In addition, such determination shall become part of the candidate's permanent ECFVG record and the fact of such determination may be provided to third parties that receive or have received verification of ECFVG status. Such information may also be provided to other legitimately interested entities.

Candidates also should understand that the ECFVG may or may not require a candidate to retake one or more portions of the ECFVG if presented with sufficient evidence that the security of the examination has been compromised, notwithstanding the absence of any evidence of a candidate's personal involvement in such activities.

Appeal Process-Candidates determined to have violated the Rules or Conduct or otherwise engaged in irregular behavior may appeal the decision by following the current ECFVG Appeal Procedure.

## Score Validity

The ECFVG reserves the sole right to determine whether or not an examination is valid or invalid. The acceptance of a candidate's application to take the examination, the scoring thereof, or the release of said examination results to any party shall not act in any way to amend the right of the ECFVG to determine whether such examinations or the scores achieved thereon are valid or invalid in whole or in part. A determination that an examination and the scores achieved thereon are invalid may be made at any time by the ECFVG. The ECFVG also reserves the right to cancel any scores that may already have been reported when subsequent information raises doubt of their validity.

Occasionally testing irregularities occur that affect a group of test takers. Such problems include, without limitation, administrative errors, defective equipment or materials, improper access to test content and/or the unauthorized general availability of test content, as well as other disruptions of test administrations. When group testing irregularities occur, the CPE site will provide information to the ECFVG. Based on this information, the ECFVG will determine what, if any, action needed to be taken. Affected test takers will be notified of the reasons for the invalidation and their options for retaking the examination. **Please note, the ECFVG Appeal Procedure does not apply to group testing irregularities.**

## Limitation of Liability

In no case shall the AVMA or ECFVG be liable to any test taker or group of test takers, either in contract or tort, for cancelling, invalidating, withholding, or changing a test score or result, as provided in this Bulletin. When appropriate, the ECFVG, at its discretion, may provide affected test takers with an opportunity to retake an examination or provide a refund of the testing fee paid.

## Appeals and Complaints

Should a candidate wish to file an appeal regarding a failing score on one or more sections of the CPE after requesting and receiving an extended score report for his/her performance on the examination, he/she may file a Petition for Reconsideration of the adverse decision by following the ECFVG Appeal Procedure. Appeals submitted without a prior request for an extended score report will not be considered by the ECFVG.

Complaints: Should a candidate wish to file a concern regarding the CPE testing experience, he/she may do so by notifying the ECFVG office in writing within three weeks of the candidate's test date. Concerns that are reported in this way will be investigated in accordance with the current ECFVG Complaints Procedure.

## Contacts

Should you have questions, please use the following contact information:

| Topic | Contact |
| --- | --- |
| <ul><li>Eligibility to take the CPE</li><li>Application Procedure</li><li>Special testing accommodations</li><li>Scheduling and confirming your testing appointment</li><li>Directions to test centers</li></ul> | ECFVG Testing Coordinator<ul><li>E-mail: ECFVG</li><li>Phone: 800-248-2862, ext. 6682</li><li>Fax: 847-285-5732</li><li>Address: 1931 N. Meacham Rd, Suite 100; Schaumburg, IL 60173-4360</li></ul> |
| <ul><li>Examination results</li></ul> | <ul><li>No results will be released by phone or fax. Results will be sent via e-mail and posted online within 20 business days after the final day of the exam.</li></ul> |
| <ul><li>Name and address change</li></ul> | ECFVG Coordinator<ul><li>E-mail: ECFVG</li><li>Phone: 800-248-2862, ext. 6682</li><li>Fax: 847-285-5732</li><li>Address: 1931 N. Meacham Rd, Suite 100; Schaumburg, IL 60173-4360</li></ul> |

## Appendix 1—Requirements for Sites Providing the CPE

**GENERAL REQUIREMENTS AND DEFINITIONS**

In order for any entity to become a CPE provider, three resource areas must be assured. The site must provide appropriate animals and their care; qualified personnel; and adequate facilities and equipment. The CPE *Manual of Administration* (MOA) describes specific sections and skills to be assessed and serves as the guide for administering the CPE to all candidates. The ECFVG recognizes that there are variables that cannot be controlled completely (eg, the temperament of the animals used, equipment malfunction, etc), but expects that each site will adhere as closely as possible to the standards set forth in the CPE Manual. All CPE sites (existing or new) must agree to be monitored by the Educational Commission for Foreign Veterinary Graduates (ECFVG) or the National Examining Board (NEB) of the Canadian Veterinary Medical Association. The process for monitoring CPE sites is described in the ECFVG document titled *Quality Assurance for the CPE—Site Proposal*, available as an appendix in the CPE Candidate Bulletin at www.avma.org/professionaldevelopment/education/foreign/pages/ecfvg-cpe-bulletin.aspx; see specifically www.avma.org/professionaldevelopment/education/foreign/pages/ecfvg-cpe-bulletin.aspx#cpe-appendix-2.

Candidates will not be assessed at a CPE examination site if:

9

He/she is a graduate of that school/college.
He/she has participated in a clinical training program at that site or school/college.*
He/she is an employee or former employee of that site or school/college.*

*Exception only for Université de Montréal, St. Hyacinthe (French speaking; for NEB purposes only).

**ANIMAL REQUIREMENTS**

It is imperative that the CPE site provide for humane care and treatment of animals. In order to assure proper care and treatment, the following are required:

- Animal resources (species, weights, age, sex, numbers, etc) must meet the standards set forth in the CPE *Manual of Administration*.
- Local, state, and United States federal animal welfare laws, or similar laws applicable in Canada, must be enforced and the facility must meet the standards of the most current United States Federal Animal Welfare Act or the Canadian Council on Animal Care.

Acceptable sources of live and necropsy animals and bovine fetuses may include the following:

- Those consistent with Provincial Animals for Research Acts
- United States Department of Agriculture, licensed animal dealers
- Purpose bred animals
- Animal Shelters
- Food animal producers
- Livestock sales
- Slaughter houses
- Institution/practice owned
- Donated animals must be accompanied by a signed consent form from the donor.
- Owned animals with signed consent from the owner.

Examinations centered on real, or simulated, cases with the use of live animals provides the ability to assess a candidates skills beyond what can be assessed through traditional test methods. However, the use of animals provides a dynamic variable to an otherwise standardized test situation. To ensure that candidates are tested and assessed as accurately as possible and to improve the defensibility of the examination in the face of appeals, the ECFVG strongly recommends that best test practices for the use of live animals include confirmation of signs consistent with the tested diagnosis on the day of examination – when using animals repeatedly over multiple examinations, examiners should recognize that signs may change over time. For example, a horse with navicular disease that is predominantly lame on the LF when originally examined and used for the CPE may be predominantly lame on the RF at a subsequent CPE date. Therefore, it is recommended that examiners examine animals on the date of use for the CPE and document physical exam findings rather than relying on historical findings for that animal.

All weights provided for animals used in the CPE will be given in kilograms (kg).

**PERSONNEL REQUIREMENTS**

Personnel utilized for administration and scoring of the CPE must possess demonstrated expertise to test entry-level clinical skills of veterinary graduates. The site and section coordinators and examiners must possess well-founded knowledge of the list of common conditions/diseases and pharmaceuticals/biologicals as they pertain to the practice of veterinary medicine in the United States and Canada. Site coordinators should take precautions to ensure that potential ECFVG applicants are not utilized to deliver the examination.

In order to assure adequate personnel, the following minimum standards are required:

- Personnel must be provided as specified in the CPE *Manual of Administration*.
- Four levels of personnel are identified. Each level must meet the minimum standards listed:
    - *Site Coordinator or equivalent*—This person coordinates and manages the activities of the examination site. They must have a DVM degree (or equivalent) with a minimum of five (5) years clinical experience in a discipline representing one of the examination sections that make up the CPE. Site Coordinators must also consistently attend CPE Site Coordinators Meetings facilitated by the ECFVG and NEB.
    - *Section Coordinator or equivalent*—This person organizes and sets up the specific section of the examination and is responsible for the overall quality control and administration of that section (see CPE Manual of Administration). Section Coordinators must have a DVM degree (or equivalent) and been practicing in the section/discipline within the last 10 years, with a minimum of five (5) years' experience in the section/discipline.
    - *Examiner*—This person coordinates and sets up the station with the Section Coordinator, administers the station, and is directly responsible for evaluating the candidates. The examiner also signs off as the primary examiner on all assessment sheets, even when a secondary examiner or technician takes part in assessing a candidate's performance. Examiners must have a DVM degree (or equivalent) and been practicing in the section/discipline within the last 10 years, with a minimum of two (2) years clinical experience in the section/discipline. In addition,

10

beginning in 2014, every examiner must participate in ECFVG (and/or NEB)-approved CPE examiners' web or video-based conference training sessions at least every two years, including modules on basic examination administration, section-specific training, and diversity training.

- Technical Assistant—This person assists the examiner(s) in monitoring the examination and may assist in evaluating the candidates. He/She must possess training and expertise in the species/procedure for which he/she is assisting. If the technical assistant is responsible for assisting the examiner(s) in candidate evaluation, he/she must be under the direct supervision of the examiner and have licensing, certification, or other documentation of expertise in that section/discipline.

**FACILITIES AND EQUIPMENT**

The facilities and equipment used in the CPE should meet contemporary practice standards for the US and/or Canada. Facilities refer to structures and equipment refers to movable items used to practice clinical veterinary medicine. CPE sites are expected to comply with the following:

- Facilities and equipment used for the CPE should meet the requirements outlined in the CPE Manual of Administration.
- The facilities should assure the safety of personnel and candidates, and provide for the safety and welfare of the animals.
- The facilities and equipment should be adequate to examine multiple candidates simultaneously.
- The facilities and equipment may vary slightly between sites in order to comply with all relevant local, state, provincial and United States or Canadian Federal regulations. These requirements include, but are not limited to zoning, radiation safety, personnel and animal safety, animal care and use, and potentially toxic or dangerous substances (anesthetic gases).
- Because candidates are being evaluated on their ability to practice veterinary medicine at the entry level of competence, physical facilities and equipment should be equivalent to those used in a United States or Canadian contemporary veterinary clinical facility.
- Candidates for the examination must be provided with an adequate staging area for orientation, storage, and rest.
- All sites must provide timers, visible to all candidates, for each station or section. Whenever possible, timers should be of the "count-down" variety to allow candidates and examiners alike to clearly see time remaining in station or section.

# Appendix 2—Quality Assurance for the CPE Site

All CPE sites (existing or new) must agree to be monitored by the Educational Commission for Foreign Veterinary Graduates (ECFVG) or the National Examining Board (NEB) of the Canadian Veterinary Medical Association.

**TO ESTABLISH AN EXAMINATION SITE**

All those interested in establishing a CPE site must provide the ECFVG or the NEB with a comprehensive proposal outlining how the site meets the requirements set forth in the CPE *Manual of Administration*, and address all items in the *Requirements for Sites Providing the Clinical Proficiency Examination (CPE)*.

The chair of the ECFVG or NEB appoints a three-member committee as noted below, to assess the proposal:

1. A CPE site consultant (current or previous CPE site or section coordinator with a minimum of two years experience providing the CPE or a current or previous ECFVG member).
2. A current ECFVG or NEB member (the chair of the Commission may appoint himself/herself as the ECFVG member).
3. An American Veterinary Medical Association (AVMA) or Canadian Veterinary Medical Association (CVMA) professional staff member who provides support to the ECFVG or NEB.

Based on the criteria contained in the *Requirements for Sites Providing the Clinical Proficiency Examination (CPE)*, the committee analyzes the proposal and makes a recommendation to the ECFVG or NEB to approve or disapprove the proposal. If the proposal is approved, the ECFVG or NEB authorizes a "pre-exam" site visit. If the proposal is disapproved, the vendor is notified of the rejection in writing and given the reasons for the disapproval. The vendor is informed that another proposal is welcome if the deficiencies are addressed. The vendor may appeal, through the original process, the decision to disapprove the proposal to the ECFVG or NEB.

**SITE QUALITY ASSURANCE**

The CPE *Manual of Administration* provides a detailed outline of the CPE and the requirements for administering the examination. However, the sites require standardization, particularly related to administration of the examination and evaluation of the candidates. Therefore, the following steps have been designed to assist sites in establishing a quality assurance program.

*Pre-Exam Site Visit*

A site visit must be conducted before administration of the first examination to ensure that the resources described in the proposal are present and meet the expected standards.

The site visit is conducted by a CPE site consultant (preferably the same individual who evaluated the original proposal) who shall be appointed by the ECFVG or NEB.

All facilities and equipment must be in place. The animal resources plan must be established, although animals may not be on the premise at the time of the site visit. The site coordinator must meet with the site consultant to assure the qualification of all

11

CPE personnel concerning knowledge of entry-level veterinary practice; communication skills, level of understanding of the CPE *Manual of Administration*, conveyance of professionalism, comprehension of the evaluation process, and understanding of the resources necessary to provide the CPE.

The pre-examination site consultant provides a written report of findings to the ECFVG or NEB.

*Possible Outcomes of the Site Visit*

1. The site is approved and may administer its first CPE.
2. Approval of the proposed site may be delayed based upon deficiencies. The site is notified, in writing, of the deficiencies and asked if it wishes to correct the deficiencies to meet the minimum standards to become a site or to withdraw the bid.
3. Approval of the site is denied because the proposed site is unable to demonstrate that appropriate animal resources can be provided, personnel are insufficient or inadequately trained or experienced, and/or the facility and equipment do not meet the standards of a contemporary clinical veterinary practice.

Final approval or denial of the site is made by the ECFVG or NEB.

The proposed site may not administer the CPE without final approval of the ECFVG or NEB and may schedule only one examination after approval is granted.

*Oversight of the First Examination*

A site consultant must be present during administration of the first CPE to assist the site in understanding all factors involved in the examination.

The site consultant ensures that:

1. The format in the CPE *Manual of Administration* is followed, as published.
2. All examination resources are in place and are consistent with those described in the original proposal for that specific site.
3. Standards of evaluation are being applied consistently and fairly.
4. The site is examining for entry-level clinical practice skills.
5. The clinical cases and examination resources (slides, radiographs, etc.) are of good quality.
6. The flow of the examination is appropriate (candidate activity is stopped if an animal is in danger or a human is placed at risk, candidates are not subjected to long inactive periods, etc.).

*Decision Process Resulting from the First Administration of the CPE*

The site consultant will complete an evaluation list for that site and the results will be reported in writing to the ECFVG or NEB. Based upon the analysis of the report, the ECFVG or NEB may:

1. Notify the site in writing that it has met the standards and may continue to provide the CPE with customary periodic monitoring.
2. Provide written feedback to the site for correction of deficiencies. If the site agrees to correct the deficiencies, it may continue to provide the CPE with close periodic monitoring.
3. Close the site as being unacceptable in providing the CPE, as notified in writing.

*Periodic Monitoring*

All existing and new CPE sites are monitored on an ongoing basis. Monitoring consists of providing the ECFVG or NEB with a written report regarding each examination and the outcomes and periodic site visits. The ECFVG will give 2 months' notice for a site evaluation, but reserves the right to do an unannounced visit.

No more than thirty (30) days following the last day of each examination, ECFVG-approved CPE sites are required to report specific information for each section of the CPE on an Excel spreadsheet provided by the ECFVG office. These "after-exam reports" must be submitted to the ECFVG office in an electronic format. The use of the after-exam reports will allow the ECFVG to monitor at least three consecutive examinations at each site to ensure all sites are complying with clinical case and other requirements specified in the Manual of Administration.

Each ECFVG member will be assigned a CPE site and will serve as the reviewer of that site during his/her tenure on the ECFVG. The ECFVG will accept, reject for cause, or receive reports of CPEs administered at each of its meetings, and will communicate with the sites immediately following each meeting. The NEB will monitor its approved CPE sites in a manner determined by the NEB.

Every two years, or every 120 full-exam candidates, or as determined by monitoring of the after-exam reports, a site consultant, appointed by the ECFVG Chair, will visit ECFVG-approved sites during a CPE and evaluate the examination process. A written report will be submitted by the site consultant to the ECFVG, which will evaluate the report in relationship to the CPE Manual of Administration. The ECFVG will make a decision on ongoing approval of the site to continue administering the CPE and will provide its decision, in writing, to the site, together with required or recommended actions for improvements. The NEB will conduct on-site evaluations of its approved CPE sites in a manner determined by the NEB.

Travel expenses and a consultant fee for the periodic monitoring is funded by the CPE or ECFVG Quality Assurance Program (QAP) for ECFVG-approved sites and the NEB for NEB-approved sites.

# Appendix 3—ECFVG Policy on Testing Accommodations

*Introduction*—The AVMA/ Educational Commission for Foreign Veterinary Graduates (ECFVG) provides equal access to programs and services for individuals with documented disabilities by providing reasonable accommodations. The ECFVG Policy on Testing Accommodations provides individuals, schools, professional diagnosticians, and service providers with information regarding how to document a disability and a related need for accommodations for candidates for the ECFVG Clinical Proficiency Examination (CPE). The candidate is still required to have and demonstrate the skills and knowledge of veterinary medicine. Reasonable accommodations do not alter or change the skills and knowledge that must be demonstrated or examination as a fundamental method of assessing the requisite skill and knowledge.

The Americans with Disabilities Act of 1990 (ADA) define a person with a disability as someone with a physical or mental impairment that substantially limits one or more major life activities such as walking, seeing, hearing, or learning. The candidate has the responsibility to demonstrate a qualifying disability. The more comprehensive the information provided especially regarding the disability and related functional limitation as supported by qualified professionals, the better ECFVG with its consultants can make a decision regarding the need for and appropriate accommodation to be provided. Accommodations "match up" with the identified functional limitation so that the area of impairment is mitigated by an auxiliary aid or adjustment to the testing procedure. For example, a functional limitation might be an inability to hear within normal limits. An appropriate accommodation might be use of an amplified stethoscope. It is essential that the documentation submitted with an accommodations request provide a clear explanation of the functional impairment and a rationale for the requested accommodation.

The determination of a disability by ECFVG is an individualized inquiry and will be made on a case-by-case basis, per individual and per examination administration. ECFVG reserves the right to make final judgment regarding testing accommodations. If your request for testing accommodation is denied you will be entitled to take the examination at the time originally scheduled or at another test date acceptable to you and ECFVG.

As noted in the CPE Manual of Administration, the Clinical Proficiency Examination (CPE) is a hands-on examination of entry-level educational clinical skills and judgments designed for graduates of non-AVMA/Council on Education (COE)-accredited veterinary colleges. The CPE is intended to assess the practical clinical veterinary skills of an "entry-level" veterinarian (ie, a new graduate of an AVMA/COE-accredited school). The CPE Manual of Administration lists the specific clinical proficiency skills measured by each section of the examination.

The reasonable accommodations that may be provided for the CPE will be considered on a section-by-section basis. Because of the different clinical skills measured by the different sections, accommodations may be provided for some sections but not for others. In no case will accommodations be provided that would compromise any examination section's ability to test accurately the skills and knowledge it purports to measure. Similarly, no auxiliary aid or service will be provided that will fundamentally alter any section of the examination.

As part of the measurement of clinical "efficiency," candidates are assessed on their timely and effective use of resources to complete a procedure. Efficiency is a component of competency. Therefore, an accommodation of additional testing time will not be provided for those sections that assess efficiency. Similarly, no accommodations, including additional testing time, will be provided where the safety and welfare of an animal may be compromised.

*Confidentiality*—Except where necessary to make a determination of appropriate accommodations, the ECFVG does not disclose names of applicants with disabilities or information concerning the application or accompanying documentation. In that event, such information shall be disclosed only to outside experts and other consultants, who are required to maintain confidentiality. Entities receiving verification of certification are not advised of any accommodations provided to the subject candidate.

*When to Request Test Accommodations for the CPE*—After being notified of eligibility and submission of the on line CPE application the completed CPE Test Accommodation Request Form (available on line) must immediately be submitted to the ECFVG office. Appropriate documentation of the disabling condition and need for accommodations must accompany the CPE Test Accommodation Request Form. In order to facilitate processing and to avoid delay, the ECFVG encourages applicants to provide detailed and complete responses to the request for test accommodations and accompanying documentation.

*How to Request Test Accommodations for the CPE*—All requests for ADA accommodations must be **in writing** for each accommodation. Accommodation requests by a third party (such as an evaluator or veterinary school) cannot be honored. Candidates should read and comply with the following seven steps to request accommodations:

1. Read the General Guidelines for Documenting Disabilities, Guidelines for Documenting Learning Disabilities, and Guidelines for Documenting Attention-deficit/Hyperactivity Disorder (hereinafter "GUIDELINES") provided below and share them with the professional who will be preparing your documentation. Your treating professional must provide the necessary supporting documentation as described in these guidelines.
2. Complete and sign the CPE Test Accommodation Request Form application. Alternatively, if you are applying to retake one, two, or three failed sections of the CPE, complete and sign the ECFVG Request for Subsequent (Retake) Test Accommodations for the Clinical Proficiency Examination (CPE), which may also be obtained on written request from the ECFVG office.
3. Attach documentation of the disability and your need for accommodation.
    1. Compare your documentation with the information listed in the GUIDELINES to ensure a complete submission.

13

2. Untimely, incomplete or inadequate documentation will delay processing of your request.

4. Attach a personal statement describing your disability and its impact on your ability to function in a clinical setting and in your daily life. If you are currently a practicing veterinarian, also describe any current workplace accommodations.
5. Submit all documentation as outlined in the GUIDELINES, including the following:
    1. Typed or printed letters and reports from evaluators on official letterhead.
    2. All documents in English. You are responsible for providing certified English translations of foreign-language documentation.
    3. Records from childhood if you are requesting accommodations based on a developmental disorder such as learning disorders (LD) or attention deficit/hyperactivity disorder (ADHD).
    4. Documentation of your functional impairment in activities beyond test-taking.
    5. Verification of your functional impairment by impartial third-party individuals who have observed you in day-to-day functioning or in clinical situations.
6. Retain a photocopy of all Request Forms and documentation submitted.
7. Send your completed ECFVG Test Accommodation Request Form for the CPE and documentation via a traceable or return-receipt method with your CPE application to:
   AVMA/ECFVG
   Attn: Testing Coordinator
   1931 N. Meacham Rd. Suite 100
   Schaumburg, IL 60173

*General Guidelines for Documenting Disabilities*—When requesting a testing accommodation based on an impairment that substantially limits one or more major life activities submit the following documentation from your testing professional:

1. A detailed, comprehensive written report describing the candidate's disability and its severity and justifying the need for the requested accommodations. Documentation in support of requests for accommodations on the basis of a learning disability or attention-deficit/hyperactivity disorder must also comply with the Guidelines for Documenting Learning Disabilities or Guidelines for Documenting Attention-Deficit/Hyperactivity Disorder, respectively.
2. The following characteristics are expected of all documentation submitted in support of a request for accommodations. Documentation must:
    1. State a specific diagnosis of the disability. A professionally recognized diagnosis for the particular category of disability is expected (eg, the DSM-IV diagnostic categories for learning disabilities).
    2. Be current. Because the provision of reasonable accommodations is based on assessment of the current impact of the examinee's disability on the testing activity, it is in the individual's best interest to provide recent documentation. As the manifestations of a disability may vary over time and in different settings, in most cases an evaluation should have been conducted within the past three years. For example, low vision or neuromuscular conditions are often subject to change and should be updated for current functioning.
    3. Describe the specific diagnostic criteria and name the diagnostic tests used, including date(s) of evaluation, specific test results, and a detailed interpretation of the test results. This description should include the results of diagnostic procedures and tests utilized and should include relevant educational, developmental, and medical history. Specific test results should be reported to support the diagnosis. For example, documentation for an examinee with multiple sclerosis should include specific findings on the neurological examination including functional limitations and MRI or other studies, if relevant. Diagnostic methods used should be appropriate to the disability and current professional practices within the field. Informal or non-standardized evaluations should be described in enough detail that other professionals could understand their role and significance in the diagnostic process.
    4. Describe in detail the individual's limitations due to the diagnosed disability (ie, a demonstrated impact on functioning on the CPE) and explain the relationship of the test results to the identified limitations resulting from the disability. The current functional impact on physical, perceptual, and cognitive abilities should be fully described (eg, the extent to which an examinee with macular degeneration and resulting reduced central vision is limited in the ability to read).
    5. Recommend specific accommodations and/or assistive devices including a detailed explanation of why these accommodations or devices are needed and how they will reduce the impact of the identified functional limitations. Accommodation requests for the CPE and their justification must be section specific. For example, a request for special lighting might be appropriate for the Surgery section, but not for the Small Animal Practice section. Extra time might be appropriate for the written stations in such sections as Small Animal Practice and Radiology but not for sections requiring demonstration of competencies required in Anesthesia or Surgery.
    6. Establish the professional credentials of the evaluator that qualify him or her to make the particular diagnosis, including information about licensure or certification and specialization in the area of the diagnosis. The evaluator should present evidence of comprehensive training and direct experience in the diagnosis and treatment of adults in the specific area of disability.
3. If no prior accommodations have been provided, the qualified professional expert should include a detailed explanation as to why no accommodations were given in the past and why accommodations are needed now.

*Guidelines for Documenting Learning Disabilities*—When submitting a request for accommodations based specifically on a learning disability or cognitive impairment the following documentation is needed.

14

1. The evaluation must be conducted by a qualified professional. The qualified professional (diagnostician) must have comprehensive training in the field of learning disabilities and must have comprehensive training and direct experience in working with an adult population.
2. Testing/assessment must be current. The determination of whether an individual is significantly limited in functioning according to ADA criteria is based on assessment of the current impact of the impairment. (See General Guidelines for Documenting Disabilities). A developmental disorder such as a learning disability originates in childhood and, therefore, information which demonstrates a history of impaired functioning should also be provided.
3. Documentation must be comprehensive. Objective evidence of a substantial limitation in cognition or learning must be provided. At a minimum, the comprehensive evaluation should include the following:
    1. A diagnostic interview and history taking. Because learning disabilities are commonly manifested during childhood, though not always formally diagnosed, relevant historical information regarding the individual's academic history and learning processes in elementary, secondary and postsecondary education should be investigated and documented. The report of assessment should include a summary of a comprehensive diagnostic interview that includes relevant background information to support the diagnosis. In addition to the candidate's self-report, the report of assessment should include:
        - A description of the presenting problem(s);
        - A developmental history;
        - Relevant academic history including results of prior standardized testing, reports of classroom performance and behaviors including transcripts, study habits and attitudes and notable trends in academic performance;
        - Relevant family history, including primary language of the home and current level of fluency in English;
        - Relevant psychosocial history;
        - Relevant medical history including the absence of a medical basis for the present symptoms;
        - Relevant employment history;
        - A discussion of dual diagnosis, alternative or co-existing mood, behavioral, neurological and/or personality disorders along with any history of relevant medication and current use that may impact the individual's learning; and
        - Exploration of possible alternatives that may mimic a learning disability when, in fact, one is not present.
    2. A psychoeducational or neuropsychological evaluation. The psychoeducational or neuropsychological evaluation must be submitted on the letterhead of a qualified professional, and it must provide clear and specific evidence that a learning or cognitive disability does or does not exist. It must also have the following characteristics:
        - The assessment must consist of a comprehensive battery of tests.
        - A diagnosis must be based on the aggregate of test results, history and level of current functioning. It is not acceptable to base a diagnosis on only one or two subtests.
        - Objective evidence of a substantial limitation to learning must be presented.
        - Tests must be appropriately normed for the age of the patient and must be administered in the designated standardized manner.
        - Minimally, the domains to be addressed in the psychoeducational or neuropsychological evaluation should include assessment of:
            1. Cognitive Functioning: A complete cognitive assessment is essential with all subtests and standard scores reported. Acceptable measures include but are not limited to: Wechsler Adult Intelligence Scale-III (WAIS-III); Woodcock Johnson Psychoeducational Battery-III (WJ-III): Tests of Cognitive Ability; Kaufman Adolescent and Adult Intelligence Test.
            2. Achievement: A comprehensive achievement battery with all subtests and standard scores is essential. The battery must include current levels of academic functioning in relevant areas such as reading (decoding and comprehension) and mathematics. Acceptable instruments include, but are not limited to, the Woodcock-Johnson Psychoeducational Battery - Revised: Tests of Achievement (WJ-III); The Scholastic Abilities Test for Adults (SATA); Woodcock Reading Mastery Tests-III. Specific achievement tests are useful instruments when administered under standardized conditions and when interpreted within the context of other diagnostic information. The Wide Range Achievement Test-3 (WRAT-3) and the Nelson-Denny Reading Test are not comprehensive diagnostic measures of achievement and therefore neither is acceptable if used as the sole measure of achievement.
            3. Information Processing: Specific areas of information processing (e.g., short- and long-term memory, sequential memory, auditory and visual perception/processing, auditory and phonological awareness, processing speed, executive functioning, motor ability) must be assessed. Acceptable measures include, but are not limited to, the Detroit Tests of Learning Aptitude - Adult (DTLA-A), Wechsler Memory Scale-III (WMS-III), information from the Woodcock Johnson Psychoeducational Battery-III Tests of Cognitive Ability, as well as other relevant instruments that may be used to address these areas.
            4. Other Assessment Measures: Other formal assessment measures or nonstandard measures and informal assessment procedures or observations may be integrated with the above instruments to help support a differential diagnosis or to disentangle the learning disability from co-existing neurological and/or psychiatric issues. In addition to standardized test batteries, nonstandardized

measures and informal assessment procedures may be helpful in determining performance across a variety of domains.

4. Actual test scores must be provided (age-based standard scores where available) as well as identification of norms used to interpret the data. Evaluators should use the most recent form of tests and should identify the specific test form as well as the norms used to compute scores. It is helpful to list all test data in a score summary sheet appended to the evaluation.

5. Records of academic history should be provided. Because learning disabilities are most commonly manifested during childhood, relevant records detailing learning processes and difficulties in elementary, secondary and postsecondary education should be included. Such records as grade reports, transcripts, teachers' comments and the like will serve to substantiate self-reported academic difficulties in the past and present.

6. A differential diagnosis must be reviewed and various possible alternative causes for the identified problems in academic achievement should be ruled out. The evaluation should address key constructs underlying the concept of learning disabilities and provide clear and specific evidence of the information processing deficit(s) and how these deficits currently impair the individual's ability to learn. No single test or subtest is a sufficient basis for a diagnosis. The differential diagnosis must demonstrate that:
   1. Significant difficulties persist in the acquisition and use of listening, speaking, reading, writing or reasoning skills.
   2. The problems being experienced are not primarily due to lack of exposure to the behaviors needed for academic learning or to an inadequate match between the individual's ability and the instructional demands.

7. A clinical summary must be provided. A well-written diagnostic summary based on a comprehensive evaluative process is a necessary component of the report. Assessment instruments and the data they provide do not diagnose; rather, they provide important data that must be integrated with background information, historical information and current functioning. It is essential then that the evaluator integrates all information gathered in a well-developed clinical summary. The following elements must be included in the clinical summary:
   1. Demonstration of the evaluators having ruled out alternative explanations for the identified academic problems as a result of poor education, poor motivation and/or study skills, emotional problems, attentional problems and cultural or language differences;
   2. Indication of how patterns in cognitive ability, achievement and information processing are used to determine the presence of a learning disability;
   3. Indication of the substantial limitation to learning presented by the learning disability and the degree to which it impacts the individual in the context of the CPE; and
   4. Indication as to why specific accommodations are needed and how the effects of the specific disability are mediated by the recommended accommodation(s).

8. Each accommodation recommended by the evaluator must include a rationale. The evaluator must describe the impact the diagnosed learning disability has on a specific major life activity as well as the degree of significance of this impact on the individual. The diagnostic report must include specific recommendations for accommodations and a detailed explanation as to why each accommodation is recommended. Recommendations must be tied to specific diagnostic test results or clinical observations. The documentation should include any record of prior accommodation or auxiliary aids, including any information about specific conditions under which the accommodations were used and whether or not they were effective. However, a prior history of accommodation, without demonstration of a current need, does not in and of itself warrant the provision of a like accommodation. **If no prior accommodation(s) has been provided, the qualified professional expert should include a detailed explanation as to why no accommodation(s) was used in the past and why accommodation(s) is needed at this time.**

9. Problems such as test anxiety, English as a second language in and of itself, slow reading without an identified underlying cognitive deficit or failure to achieve a desired academic outcome are not learning disabilities and, therefore, are not covered under the ADA.

*Guidelines for Documenting Attention-Deficit/Hyperactivity Disorder (ADHD)*—When submitting a request for accommodations based specifically on Attention-Deficit/Hyperactivity Disorder (ADHD), provide the following additional information:

1. Submit an evaluation conducted by a qualified diagnostician. Professionals conducting assessments and rendering diagnoses of ADHD must be qualified to do so. Comprehensive training in the differential diagnosis of ADHD and other psychiatric disorders and direct experience in diagnosis and treatment of adults is necessary. The evaluator's name, title and professional credentials, including information about license or certification as well as the area of specialization, employment and state in which the individual practices should be clearly provided.

2. Testing/assessment must be current. The determination of whether an individual is "significantly limited" in functioning is based on assessment of the current impact of the impairment on the CPE (see General Guidelines for Documenting Disabilities).

3. Documentation necessary to substantiate the ADHD must be comprehensive. Because ADHD is, by definition, first exhibited in childhood (although it may not have been formally diagnosed) and in more than one setting, objective, relevant, historical information is essential. Information verifying a chronic course of ADHD symptoms from childhood through adolescence to adulthood, such as educational transcripts, report cards, teacher comments, tutoring evaluations, job assessments, and the like are necessary.
   1. The evaluator is expected to review and discuss DSM-IV diagnostic criteria for ADHD and describe the extent to which the patient meets these criteria. The report must include information about the specific symptoms exhibited and document that the patient meets criteria for long-standing history, impairment, and pervasiveness.

16

2. A history of the individual's presenting symptoms must be provided, including evidence of ongoing impulsive/hyperactive or inattentive behaviors (as specified in DSM-IV) that significantly impair functioning in two or more settings.

3. The information collected by the evaluator must consist of more than a self-report. Information from third party sources is critical in the diagnosis of adult ADHD. Information gathered in the diagnostic interview and reported in the evaluation should include, but not necessarily be limited to, the following:
   - History of presenting attentional symptoms, including evidence of ongoing impulsive/hyperactive or inattentive behavior that has significantly impaired functioning over time;
   - Developmental history;
   - Family history for presence of ADHD and other educational, learning, physical, or psychological difficulties deemed relevant by the examiner;
   - Relevant medical and medication history, including the absence of a medical basis for the symptoms being evaluated;
   - Relevant psychosocial history and any relevant interventions;
   - A thorough academic history of elementary, secondary, and postsecondary education;
   - Review of psychoeducational test reports to determine if a pattern of strengths or weaknesses is supportive of attention or learning problems;
   - Evidence of impairment in several life settings (home, school, work, etc) and evidence that the disorder significantly restricts one or more major life activities.
   - Relevant employment history;
   - Description of current functional limitations relative to a clinical practice setting and to the CPE in particular that are presumably a direct result of the described problems with attention;
   - A discussion of the differential diagnosis, including alternative or co-existing mood, behavioral, neurological, or personality disorders that may confound the diagnosis of ADHD; and
   - Exploration of possible alternative diagnoses that may mimic ADHD.

4. Relevant assessment batteries must be described. A neuropsychological or psychoeducational assessment may be necessary in order to determine the individual's pattern of strengths or weaknesses and to determine whether there are patterns supportive of attention problems. Test scores or subtest scores alone should not be used as the sole basis for the diagnostic decision. Scores from subtests on the Wechsler Adult Intelligence Scale - III (WAIS - III), measures of memory function, or attention or tracking tests or continuous performance tests do not in and of themselves establish the presence or absence of ADHD. They may, however, be useful as one part of the process in developing clinical hypotheses. Checklists or surveys can serve to supplement the diagnostic profile but by themselves are not adequate for the diagnosis of ADHD. When testing is used, age-based standard scores must be provided for all normed measures.

5. Identification of DSM-IV criteria. A diagnostic report must include a review of the DSM-IV criteria for ADHD both currently and retrospectively and specify which symptoms are present (see DSM-IV for specific criteria). According to DSM-IV, "the essential feature of ADHD is a persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequent and severe than is typically observed in individuals at a comparable level of development." Other criteria include:
   1. Symptoms of hyperactivity-impulsivity or inattention that cause impairment that were present in childhood.
   2. Current symptoms that have been present for at least the past six months.
   3. Impairment from the symptoms present in two or more settings (school, work, home, etc).

6. Documentation must include a specific diagnosis. The report must include a specific diagnosis of ADHD based on the DSM-IV diagnostic criteria. Individuals who report problems with organization, test anxiety, memory, and concentration only on a situational basis do not fit the prescribed diagnostic criteria for ADHD. Given that many individuals benefit from prescribed medications and therapies, a positive response to medication by itself is not supportive of a diagnosis, nor does the use of medication in and of itself either support or negate the need for accommodation.

7. A clinical summary must be provided. A well-written diagnostic summary based on a comprehensive evaluative process is a necessary component of the assessment. The clinical summary must include:
   1. Demonstration of the evaluators having ruled out alternative explanations for inattentiveness, impulsivity, and/or hyperactivity as a result of psychological or medical disorders or non-cognitive factors;
   2. Indication of how patterns of inattentiveness, impulsivity, and/or hyperactivity across the life span and across settings are used to determine the presence of ADHD;
   3. Indication of the substantial limitation to learning presented by ADHD and the degree to which it impacts the individual in the context for which accommodations are being requested (eg, impact on the CPE); and
   4. Indication as to why specific accommodations are needed for the CPE and how the effects of ADHD symptoms, as designated by the DSM-IV, are mediated by the accommodation(s).

8. Each accommodation recommended by the evaluator must include a rationale. The evaluator must describe the impact of ADHD (if one exists) on a specific major life activity as well as the degree of significance of this impact on the individual. The diagnostic report must include specific recommendations for accommodations. A detailed explanation must be provided as to why each accommodation is recommended and should be correlated with specific identified functional limitations. Prior documentation may have been useful in determining appropriate services in the past. However, documentation should validate the need for accommodation based on the individual's *current* level of functioning. The documentation should include any record of prior accommodation or auxiliary aid, including information about specific conditions under which the accommodation was used (eg, standardized testing, final exams, etc). However, a prior history

17

of accommodation without demonstration of a current need does not in itself warrant the provision of a similar accommodation. **If no prior accommodation has been provided, the qualified professional and/or individual being evaluated should include a detailed explanation as to why no accommodation was used in the past and why accommodation is needed at this time.**

9. Because of the challenge of distinguishing ADHD from normal developmental patterns and behaviors of adults, including procrastination, disorganization, distractibility, restlessness, boredom, academic underachievement or failure, low self-esteem, and chronic tardiness or absence, a multifaceted evaluation must address the intensity and frequency of the symptoms and whether these behaviors constitute impairment in a major life activity.

*Appeal:*

*Adverse Decision* A candidate dissatisfied with a decision not to provide an accommodation or with the accommodation approved may appeal the decision pursuant to the following ECFVG appeal process:

1. Appeals must be filed in writing within 10 business days of the denial of the request for accommodation. The written appeal must state why the adverse determination is incorrect.
2. Appeals must be submitted to the Chair of the ECFVG at the AVMA ECFVG office as follows: via US or Express Mail to 1931 N. Meacham Rd, Suite 100, Schaumburg, IL, 60173-4360, USA; via E-mail to ECFVG@avma.org; or via fax 847-285-5732.
3. ECFVG in addition to reviewing the file materials and written appeal may present the candidate an opportunity to be heard to present additional information and arguments. ECFVG may engage the services of disability experts in hearing the appeal and making the final determination of eligibility.
4. Based on the information provided in the appeal, a decision will be made by the Chair of the ECFVG. The candidate will be provided with written notification of the decision and the reasons for it.



**OTHER AVMA SITES**

Externs on the Hill
National Pet Week

Animal Health SmartBrief
WebMD® Pet Health Community



Contact | AVMA Careers | Help | Site Map | Privacy | Terms of Use

Copyright © 2018 American Veterinary Medical Association

18