# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

Subhadra Gunawardana and David Seely, pro se

Plaintiffs,

v.

American Veterinary Medical Association (AVMA), Educational Commission for Foreign Veterinary Graduates (ECFVG) and Council on Education (COE)

Defendants.

Case No. 3:19-cv-00096-NJR-MAB

## PLAINTIFFS' AMENDED MEMORANDOM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs state the following in opposition to the Defendants' Motion to Dismiss, and respectfully request the Court to deny the Motion.

### INRODUCTION

In their complaint, Plaintiffs set forth the Defendants' violations of multiple statutes concisely, pursuant to Federal Rules of Civil Procedure 8(a) and 10. The statutes in question included: Contract; Civil rights violations under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3); Sherman Antitrust Act; ADA; and Equal Protection clause.

The complaint went into detail on the functions of the AVMA, the process for veterinary graduates to enter the US workforce and AVMA's role in it. The complaint provided evidence on AVMA's monopoly in the veterinary field and how it engages in economic protectionism and discrimination against certain populations, including statistics showing that 93% of US veterinarians are white Americans.

### FACTUAL BACKGROUND

1. Defendants contend that AVMA is "an Illinois non-profit organization…a private organization that provides educational accreditation and certification programs to obtain a veterinary license to practice in

1

the United States". AVMA is much more than that, with far-reaching power and numerous conflicts of interest, as evident by the differences between the medical and veterinary licensure pathways and the organizations who provide them.

2. Licensure in each professional field requires passing of a national licensing examination. Applicants eligible to take such examination are either graduates from accredited institutions, or graduates from non-accredited institutions who are certified by the appropriate educational commission.

3. On the medical side, each function is performed by a separate entity:

- Examination: USMLE, United States Medical Licensing Examination, owned and operated by the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME)

- Accreditation: LCME, Liaison Committee on Medical Education, sponsored by the Association of American Medical Colleges and the American Medical Association

- Certification: ECFMG, Educational Commission for Foreign Medical Graduates

4. These are separate distinct entities with separate distinct responsibilities. Graduates from both LCME accredited and non-accredited institutions take the same national licensing exam with the same testing standards, USMLE. Graduates from non-accredited institutions are first verified and approved through the ECFMG, which merely involves credential verification and other paperwork prior to the examination. There is no separate exam administered by the ECFMG. [See https://www.usmle.org/apply/index.html]

5. The equivalent functions in the veterinary licensing process are:

- Examination: North American Veterinary Licensing Examination (NAVLE), administered by the International Council for Veterinary Assessment (ICVA)

- Accreditation: Council on Education (COE), branch of the AVMA

- Certification: Educational Commission for Foreign Veterinary Graduates (ECVFG), branch of the AVMA; Program for the Assessment of Veterinary Education Equivalence (PAVE), administered by American Association of Veterinary State Boards (AAVSB)

2

6. Similar to the medical licensing process, NAVLE is a pre-requisite for all applicants who wish to practice in the US, whether they graduated from an AVMA accredited or non-accredited institution. *Unlike* the medical licensing process, graduates from non-accredited institutions are subjected to a number of additional burdens before they can take the NAVLE. In contrast to ECFMG certification which only involves credentials verification, ECFVG certification involves a 4 step program including credentials verification; English language testing, a written exam of basic and clinical skills; and a clinical proficiency exam (CPE), which includes seven sections of hands-on practical skills testing. In other words, unlike foreign/US medical graduates and US veterinary graduates, foreign veterinary graduates are made to repeat all their final exams before they are allowed to take the national licensing exam.

7. A limited number of state veterinary boards accept PAVE certification for foreign veterinary graduates. PAVE also has 4 steps: credentials verification, English language testing, a written exam, and the final step of Evaluated Clinical Examination (ECE). ECE involves enrollment in the final year clinical rotations in an *AVMA accredited institution*, paying out-of-state tuition, and taking and passing the final exam there. Thus PAVE is still controlled by the AVMA, is even more expensive and time-consuming than the ECFVG certification, and is not accepted by a number of states including Missouri.

8. Regardless of which path to certification they choose, foreign veterinary graduates have to go through the AVMA one way or another. Furthermore, such certification requires the extra step of repeating the final exams they already passed in their home institution, a requirement not made of foreign medical graduates, US medical graduates or US veterinary graduates.

9. Unlike the medical program where the examination, accreditation and certification are performed by separate and distinct entities, on the veterinary side all functions are performed or controlled by AVMA.

10. Unlike most companies or non-profits, AVMA has members in virtually every state and province in North America, and in every institute, board, company and association concerned with veterinary medicine. For example: Linda Scorse, DVM, is on the Missouri Veterinary Licensing Board, and is the Missouri delegate to the House of Delegates, the policy-making arm of AVMA. The director of AAVSB

Vito DelVento, DVM, is also a member of AVMA American Board of Veterinary Specialties (ABVS) of Washington, D.C., as well as a staff member on the D.C. licensing board. It is very difficult to find a veterinarian who isn't a member in some form. So much co-inhabiting of boards and associations and ownership in private practices makes for numerous conflicts of interest and ethics violations.

11. The medical licensing program has taken active steps to avoid such conflicts and violations. They are all separate entities with no co-inhabiting with each other or the government. Their procedures are transparent and comply with the Administrative Procedures Act. Foreign medical graduates have no other exams than those a US graduate takes for licensure. Following credential verification they must pass USMLE or COMLEX-USA. ECFMG doesn't seem to waste time and ask the AMA to travel the globe accrediting institutions [which AVMA/COE routinely do, in exchange for huge fees]. ECFMG relies on accreditation processes within the candidates' country of origin. ECFMG does not have an English test requirement either. Considering that US licensing exams are only given in English, anyone who isn't fluent would take them at their own peril, and an additional English requirement, as in ECFVG, is redundant.

12. In summary, it appears that the medical side wants the best picks from the world, while the veterinary side engages in protectionism. Thus ECVFG/CPE testing itself is redundant. The mere fact that ECFVG/CPE exam process exists, with no transparency or regard to accepted standards, is proof of violations of equal protection.

## STANDARD OF REVIEW

13. Plaintiffs' complaint filled out on the court's standard form and filed on February 1, 2019, complies with all requirements of rule 8(a). Specifically, page 4 of the complaint address the jurisdiction requirement of 8(a)1; pages 5 and 6 makes a short and plain statement of the claim showing plaintiffs' entitlement to relief, satisfying 8(a)2; and page 5 outlines the relief sought by plaintiffs, satisfying 8(a)3.

14. Rule 8(a)2 states only that a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Contrary to the implication in the Motion, Rule 8(a) does not require

such a statement to accompany each and every count of a complaint, making for unnecessary length and repetition. Plaintiffs' memorandum in support of the complaint (hereafter Memo) simply elaborates on the statement of the claim already made in the complaint, and describes in detail several counts that arise from the actions of Defendants.

15. As stated in the complaint and Memo: Defendants' actions barred the Plaintiff Dr. Gunawardana from entering the US workforce in the field of veterinary medicine, resulting in damages to both Plaintiffs. The damages are described both in the complaint and in the Plaintiffs' Response to the Court's Show Cause Order. Defendants' actions that injured the Plaintiffs arise from one general set of circumstances, i.e. the Defendants' policies on accreditation of veterinary education institutions and certification of graduates from non-accredited institutions. Plaintiffs allege, with evidence, that these policies are designed to discriminate against several groups [of which Plaintiff is part], with the specific intent of monopolizing the market.

16. Defendants are moving under Rule 12(b)(6) for Dr. Gunawardana and Rule 12(b)(1) for Mr. Seely. Plaintiffs have satisfied Rule 8(a) in their complaint and Memo, and showed cause for Mr. Seely's standing in response to the Court's order.

## ARGUMENT AND ANALYSIS

### David Seely's Standing

17. Plaintiff Seely's standing was addressed in the Response to the Court's Show Cause Order, which the Defendant has not rebutted in this motion. Mr. Seely has standing on two theories: Article III and Antitrust. His Article III standing is the time, money, effort and pain spent in this endeavor of getting Dr. Gunawardana's licensure [Show Cause Response 2,3,5, 8-11].

18. His antitrust standing is direct as the AVMA is the gate-keeper with sole authority on who enters the veterinary profession in the US. AVMA also consists of active market players with a personal stake in controlling the numbers entering the market, thus keeping demand and prices high [an obvious conflict of interest]. This practice has damaged Mr. Seely who has owned and rescued animals from a young age to

5

this day. Lack of access to affordable veterinary care has been a constant problem in poor communities such as the one he grew up in. [Show Cause Response 4,12-14]

19. As a disabled person suffering from numerous health problems, Mr. Seely is a consumer of many pharmaceuticals and medical technologies, the development of which involves the skills of veterinary research professionals, and requires lab animal veterinary services. Market control by AVMA hikes up the prices of all these services used by Mr. Seely as a patient and consumer, and deprives him of the opportunity to receive services from a wide and diverse group of qualified professionals. *Trafficante v. Metropolitan Life Ins. Co.* C-70 1754 ( N.D. Cal. )

20. Mr. Seely spent considerable time, money and effort in his wife's efforts seeking entry into the US workforce. This harmed him financially as well as physically. By controlling the market AVMA violated antitrust laws by keeping demand up and prices high. The relief requested in the complaint, i.e. awarding the CPE certificate to Dr. Gunawardana, some monetary compensation, and revising AVMA policies, would redress the damages.

21. Thus, Mr. Seely claimed factual injury, which Defendant failed to adequately address, merely stating he has no standing as a spouse. While under most circumstances spouses and relatives cannot be a party to contractual suits where they are not parties, there are exceptions. "This court held that because of the economic effect on her (a joint bank account and the level of spousal support), she was asserting her own rights and thus had standing. Id. at 973." *International Ass'n of Firefighters v. City of Ferguson, 283 F.3d 969 (8th Cir. 2002).* In the instant case Mr. Seely's ADA rights were violated and he sustained economic injury, due to the physical and financial damage he suffered through AVMA's actions against his wife. His antitrust standing is more direct and separate, as described above.

22. *Hartig Drug Co. Inc. v. Senju Pharmaceutical Co. Ltd., No. 15-3289 (3d Cir. Sept. 7, 2016).* "In arguing the motions to dismiss in the District Court, no one questioned whether Allergan's attack on Hartig's antitrust standing should have been brought under Rule 12(b)(6) instead of as a matter of subject-matter jurisdiction under Rule 12(b)(1)."

6

23. Since Mr. Seely has shown significant pleading for his Article III standing, Defendants' challenge properly brought under Rule 12(b)(1) should be dismissed. Defendant neither mentioned Mr. Seely's antitrust standing, nor properly challenged it under Rule 12(b)6. Even if Defendant had done so under Rule 12(b)(6), Plaintiffs believe they have made ample showing to dismiss the challenge.

**Plaintiff Established a Violation of Contract claim and satisfied basic pleading requirements.**

24. Count I clearly states, with evidence, that the Defendant's contract was unconscionable. It further states that Plaintiff did not receive the fair treatment expected of said contract. Plaintiffs' claim was plain enough for the Defendants to understand and present a rebuttal with an unredacted exhibit as evidence.

25. The unconscionability of said contact is corroborated by Defense Exhibit 1, the waiver all candidates are required to sign as a condition of entry to ECFVG program. Such a waiver which renders one party to a contract entirely powerless, would be unenforceable due to unequal bargaining power.

26. The cases cited by the Defense in their Motion are not applicable in the instant action. As stated in *Sanjuan v. American Bd. of Psychiatry & Neurology, 40 F.3d 247, 1994 U.S. App. LEXIS 32958 (7th Cir. Nov. 21, 1994)*. "Illinois does not permit professional associations full sway over admissions criteria if membership is an "economic necessity." *Treister v. American Academy of Orthopaedic Surgeons, 78 Ill.App.3d 746, 755, 33 Ill. Dec. 501, 507, 396 N.E.2d 1225, 1231 (1st Dist.1979)*."

27. It is erroneous to compare the board certifications in the cases cited with ECFVG certification. None of the certifications/memberships in these cases are necessary to practice in those fields, but are merely continuing education to demonstrate proficiency in a specialty. They are not an *economic necessity* as is the ECFVG certification, without which a foreign graduate cannot get licensed.

**Waiver**

28. In Illinois waivers are considered contracts and are heavily construed against the drafter. They must "(1) Clearly spell out the intention of the parties; (2) No social relationship between the parties preventing

enforcement; and (3) not against public policy. *Evans v. Lima Flight Team, Inc., 373 Ill. App.3d 407 (Ill. App. Ct. 2007).*

29. "More recently, we observed that exculpatory clauses are not favored and must be strictly construed against the benefitting party, particularly one who drafted the release." *Harris v. Walker, 119 Ill.2d 542, 548, 116 Ill.Dec. 702, 519 N.E.2d 917, 919 (1988).*

30. "An exculpatory clause places two public policy interests at conflict: (1) a person should be liable for his or her negligent conduct, and (2) contracting parties may freely contract about their affairs." *Simmons v. Columbus Venetian Stevens Buildings, Inc., 20 Ill.App.2d 1, 11–12, 155 N.E.2d 372, 377 (1958)*; *Evans v. Lima Lima Flight Team, Inc., 373 Ill.App.3d 407, 412, 311 Ill.Dec. 521, 869 N.E.2d 195, 201 (2007).*

31. "…a liability release may be invalid " 'where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff.'.., (uneven bargaining position "may arise [(1)] from the defendant's monopoly of a particular field of service, [(2)] from the generality of use of contract clauses insisting upon assumption of risk by all those engaged in such a field, so that the plaintiff has no alternative possibility of obtaining the service without the clause; or [(3)] it may arise from the exigencies of the needs of the plaintiff himself, which leave him no reasonable alternative to the acceptance of the offered terms")." Our research shows several sister states considering exculpatory clauses between an educator and a student have held such clauses are categorically void as matter of public policy. See Wagenblast v. Odessa School District No. 105–157–166J, 110 Wash.2d 845, 758 P.2d 968, 971–73 (Wash.1988)" *Spears v. Association of Illinois Electric Cooperatives, 2013 IL App (4th) 120289.*

32. The mere existence of this waiver proves intent of unequal bargaining power in this case. To the Plaintiffs' knowledge the NBME does not require a waiver for USMLE candidates. Instead they must have insurance, both health and malpractice, which is not required for CPE candidates, and USMLE carries site insurance. It appears the AVMA is more concerned with their own liability than the health and welfare of their patients, candidates or clients.

8

33. The language of the waiver is entirely one-sided, releasing and exonerating the AVMA and ECFVG from any and all claims arising from or related to any part of the certification process, thus allowing AVMA/ECFVG to perform any act of negligence or injustice without consequence. Applicants who wish to practice in the US have no choice but to sign this waiver. These circumstances make for gross inequality of bargaining power, and conflict with public policy. Therefore, the waiver cannot be enforced.

**Count II**

34. Plaintiffs have fully complied with Rule 10(b), which states only that: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."

35. All statutory allegations Plaintiffs make arise from a single set of circumstances, i.e. AVMA's policies on the admittance of veterinary professionals into the US workforce. Plaintiffs grouped the counts in a practical, plain way, hoping to streamline the whole complaint. Defendants' responses indicate all counts were clearly understood.

36. As far as "commingling of three separate statutory schemes in four allegations under one count violates basic pleading requirements": There is no mention of commingling in the cases cited in the Defendants' Motion.

37. Stating several related statutory allegations under one count does not violate rule 10(b) or any other pleading requirement, as long as the claims are stated with clarity in numbered paragraphs. Accordingly, Plaintiffs stated three related statutory allegations in four paragraphs under Count II of the Memo. Further separation is not required by rule 10(b), and would not serve any purpose.

**AVMA as an Employer or Employment Agency and Title VII**

38. AVMA functions as an employment agency under Title VII because they are the gatekeeper for all veterinary graduates seeking employment in the United States, and maintains a career center which functions as a liaison between potential employers and employees.

39. According to the Defendants' own statements, AVMA/COE/ECVFG are one entity and cannot "conspire against itself". Therefore the ECVFG in this theory is a part of the AVMA, and cannot be likened to separate entities such as the American Dental Ass'n and Virginia Bd. of Bar Examiners, which were not considered ""employer," an "employment agency," nor a "labor organization" within the meaning of the Act." *Woodard v. Virginia Bd. of Bar Examiners, 598 F.2d 1345 (4th Cir. 1979).*

40. Unlike the associations in the cases in question, AVMA's functions are not limited to providing certification, far from it. The COE accredits medical schools and the AVMA supports research, publishes the JAVMA, maintains an employment website to assist veterinarians with employment, lobbies congress for the field and market, sells liability insurance, advocates for veterinarians, secures grant funding for veterinarians, and supports hospitals, food and agriculture etc. Thus AVMA meets the criteria of an "employment agency," or a "labor organization" within the meaning of the Act.

41. Plaintiffs dispute that Dr. Gunawardana failed to exhaust her administrative remedies. Defendant is well aware that plaintiff exhausted all administrative remedies as required by Title VII. Defendant received the "Right to Sue" letter issued to Plaintiff by the EEOC in November 2018 [Exhibit 1]. The letter does not cite lack of jurisdiction but that the findings are inconclusive.

**U.S.C. § 1981**

42. Plaintiffs did not attempt to use Section 1981 to bring a claim of national origin discrimination. Plaintiffs' claims under section 1981 allege race discrimination. As clearly stated in paragraph 36 of the Memo, Dr. Gunawardana is part of a protected class due to both *race* and national origin, giving rise to claims under several statutes including Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and 42 U.S.C.

§ 1985(3). As stated in paragraph 39 with supporting evidence, AVMA's practices disfavor the entry of non-white races into the US workforce. Discrimination against non-white races is evident in the statistics provided in exhibit 7 of complaint. Thus the complaint alleged the presence of racial animus in AVMA's practices, which is the basis of the claim under section 1981.

### U.S.C. 1985(3)

43. This action includes three Defendants: AVMA, ECFVG and COE. When it suits their purpose, AVMA claims it has no say over the decisions of the ECFVG and COE, thus implying that they are separate entities. [Page 3 of complaint exhibit 2; Complaint exhibit 3: page 2 and 15]. Defendants' exhibit, the waiver, includes language to exonerate AVMA and ECFVG from all liability, again implying they are separate entities. Now, making a defense for 42 U.S.C. § 1985(3) allegations, Defendants claim they are a single entity. It cannot be both.

44. Also noteworthy that AVMA is unlike the typical corporation. Most veterinarians are dues-paying members who participate in and control the market, some voting and serving on AVMA's boards and House of Delegates *while* being active market participants; AVMA members are also on state veterinary boards across the country, affiliated with various government agencies, and the military. Those who administer the PAVE and NAVLE are also in AVMA, who receives government funds directly or indirectly, and makes decisions on allocating government funds. Considering the above, would the Court in *Copperweld Corp* have applied the same doctrine to an entity like AVMA?

45. Even if the intracorporate conspiracy doctrine applied, the conduct at issue falls within the exception for defendants acting outside of the scope of their employment. "…the doctrine does not apply in this case because the defendants are accused of conspiring to wrongfully divest DiLuzio of his property, which would fall outside the scope of their employment. These defendants cannot invoke this defense." *DiLuzio v. Village of Yorkville, Ohio, 796 F.3d 604 (6th Cir. 2015)*.

11

46. Accordingly, AVMA cannot be shielded by the intracorporate conspiracy doctrine. With many members who have aims that conflict with AVMA's stated principles, they are acting outside the scope of employment. While AVMA's stated goals may not include barring foreigners or non-white races, the intent of individual members who make policy decisions may run counter to those goals, resulting in policy decisions that violate the stated goals and the law.

47. 42 U.S.C. § 1985(3) refers to a conspiracy by "two or more persons……. of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws……." Considering that the AVMA's membership is widespread; that the AVMA performs many different functions and has affiliations with many organizations including state and federal entities, such a conspiracy within AVMA members, within its committees, or between AVMA and outside entities, is more than plausible.

48. Direct requests from US veterinarians to AVMA asking to limit the entry of foreign veterinarians into the US workforce, as shown in paragraph 42-44 and exhibits 11 and 12 of the Memo, are preliminary evidence of such a conspiracy. "The purpose of depriving a class of persons of equal protection of the laws or of equal privileges and immunities under the laws" is evident in AVMA's policies and procedures which place a greater burden on foreign graduates, as described in detail in the Memo and in the Factual Background in this response. Enforcement of these discriminatory policies, as AVMA/ECFVG/COE have been doing for decades, constitute acting in furtherance of the conspiracy. Plaintiffs' injuries were a direct result of said policies.

### Sherman Antitrust Act

49. Plaintiffs stated succinctly how AVMA has a monopoly in the industry [Paragraphs 45 and 33 of Memo]. Injury suffered by Plaintiffs as a result of aforementioned actions is first summarized in the short and plain statement on page 5 and 6 of the complaint form, and described in detail in the Facts section of Memo. Briefly, Defendant denied Dr. Gunawardana's certification with no transparency/fairness/due

process, thus barring her entry into the field, and violated both Plaintiffs' economic interests. Relief for all counts were stated plainly under the section "V. Relief".

50.  Regarding a contract/conspiracy: As described with evidence in paragraph 42 and exhibits 11 and 12 of Memo, there are people in the field who wish to engage in economic protectionism, presumably veterinary practitioners who are AVMA members with the ability to control policy. Furthermore, AVMA members create contracts everyday as licensing board members, researchers, clinic owners and hospital employees etc., while representing the AVMA. Most veterinarians are dues-paying members, some voting and serving on AVMA's boards and House of Delegates *while* being active market participants. Members of AVMA are also board members on state veterinary boards across the country, affiliated with various government agencies, and the military. One obvious result of such cross inhabitation is unreasonable restraint of the market, as evidenced by high prices and lack of diversity.

51.  Injury is not limited to the Plaintiffs. "The purpose of the Sherman Act is to protect consumers from injury that results from diminished competition. "*Banks v. NCAA, 977 F.2d 1081, 1087 (7th Cir.1992)*." Thus, the plaintiff must allege, not only an injury to himself, but an injury to the market as well." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984)." *Agnew v. Nat'l Collegiate Athletic Ass'n, 683 F.3d 328, 335 (7th Cir. 2012).* By engaging in economic protectionism the Defendant has caused unmeasurable damage to consumers, to science, any industry associated with animal medical science: research, medicine, animal husbandry etc. In addition to the Plaintiffs' rights and concerns, the Defendants' actions have damaged the public, science, animals and the field in general.

52.  Regarding the monopoly: PAVE program is not independent of the AVMA. Candidates must be accepted by and attend clinical rotations at an *AVMA accredited school*, and pass the final exam there. PAVE is not recognized in many states including Missouri; is administered by the AAVSB whose director is an AVMA member; is extremely expensive and there are no statistics available for the numbers of those who take it.  Importantly: PAVE program puts no dent in AVMA's position as the sole authority in the veterinary market.  All veterinary education institutions have to get accredited by AVMA/COE every few

years [at great expense], and all candidates from non-accredited institutions have to first obtain either the ECFVG certification directly administered by AVMA, or the PAVE certification which is also under the ultimate control of AVMA. Any person who wishes to practice veterinary medicine in the US has to go through AVMA one way or another, a fact Defendants cannot dispute. The Motion erroneously implies that the allegations are about monopoly in foreign certification [which AVMA still controls]. This is about monopoly in the *whole* veterinary field.

53. Plaintiffs showed that their injuries flowed from the Defendants' conduct [pages 5-6 of the Complaint form, paragraphs 33 of Memo, paragraphs 4, 12-14 of Plaintiffs' Response to Show Cause order]. Market restriction by AVMA has injured Dr. Guanwardana as a professional in said market, and Mr. Seely as a consumer of services in said market.

54. The relief sought in the complaint will redress their injuries under the Sherman Act, including the injuries suffered by Mr. Seely.

**Americans with Disabilities Act**

55. Plaintiffs contend there is no statute of limitations as this is a continued violation. While Plaintiff's injury started in October 2016, the Defendant's ADA violations are etched in their policies. ECFVG would not provide disability accommodations unless requested over 90 days before the scheduled exam, disregarding all possible problems that could occur within 90 days. To compound this, candidates cannot reschedule without losing all exam fees. This is in stark contrast to USMLE which has a very flexible rescheduling policy.

56. Courts including the Seventh have upheld this theory. "Because the violations Scherr alleges are continuing, the applicable statute of limitations does not bar her claim." *Scherr v. Marriott International, Inc.,F.3d, 2013 WL 57857 (7th Cir., Jan. 7, 2013).* Accordingly, because the policies that violate the ADA are still in effect with the ECFVG, Plaintiffs' claim is not time barred.

**Equal Protection Clause and AVMA as State actor**

57. AVMA's functions and its relationship with the federal and state governments make it a quasi-governmental entity, and there are many instances the courts have recognized private associations and institutions as state actors.

58. The performance of a public function, a function that has been traditionally and exclusively performed by the state, is state action. *Marsh v. Alabama, 326 U.S. 501 (1946).* If the government coerces, influences, or encourages the performance of an act, it is state action. *Rendell-Baker v. Kohn, 457 U.S. 830 (1982).* A private organization can be considered a state actor if there is sufficient entwinement between the state and the organization. *Brentwood Academy v. Tennessee Secondary School Athletic Association, 535 U.S. 971 (2002).*

59. The U.S. Department of Education (USDE) and National Advisory Committee on Institutional Quality and Integrity (NACIQI) *requires* the COE to send compliance reports for the accreditation of schools. The COE has operated under the association's umbrella since the 1950s, when USDE *named it the nation's sole programmatic accreditor* of domestic veterinary education. "Programmatic accreditors provide schools, including foreign programs that cater to U.S. citizens, the ability to offer students access to professional loans under Title VII of the U.S. Public Health Act."…"USDE *tapped* the COE for a bigger role — ensuring that foreign veterinary schools are qualified to participate in Title IV federal student aid, which includes programs such as Pell Grants, Direct Loans and Perkins Loans. The COE's new authority began July 1, per *federal regulations that ordered USDE to find an accrediting body* to do the job previously held by the National Committee on Foreign Medical Education and Accreditation (NCFMEA)." …" Now that the COE is a gatekeeper for Title VII *and* Title IV eligibility, U.S. veterinary accreditation is even more attractive.*" VIN news article July, 3, 2015, Jennifer Fiala* [https://news.vin.com/VINNews.aspx?articleId=37274&callshare=1]

60. The NCFMEA, a part of the USDE, was authorized by the Higher Education Opportunity Act of 2008. NCFMEA is authorized to evaluate the standards of accreditation applied to foreign medical schools,

and to determine the comparability of those standards to standards applied to medical schools in the United States. Evidently the USDE and the Federal government decided the COE was a better choice to accredit foreign veterinary schools than a government committee. The Federal government required USDE to perform a specific task and they went directly to (tapped) AVMA, whom they have named the *sole* accreditor since the 1950's. AVMA is a Title IV gatekeeper regarding federal student funding sources.

61. These are clear signs of the government influencing the act. Importantly, "accreditation by AVMA-COE is a *required* element in enabling the programs the agency accredits to establish eligibility to participate in non-HEA *federal* programs." Also AVMA "prioritizes some programs administered by the U.S. Departments of Agriculture (USDA) and Health and Human Services (HHS) as "active pursuit of passage" and other programs as "support" passage during the congressional appropriations process" for them or their members. *See AVMA Fiscal Appropriations.* Thus, the AVMA's functions of accreditation of veterinary education institutions and certification of graduates from non-accredited institutions represent the exercise of a right or privilege created by the state or by a rule of conduct imposed by the state, making it a state actor. The mere fact that the state has entrusted AVMA with aforementioned tasks confers a state right, privilege, or rule of conduct.

62. State licensing boards require either ECFVG certification or graduation from an AVMA accredited school for all veterinarians applying for licensure. Passing the CPE and receiving the ECFVG certificate is a *pre-requisite* for licensure in most states including Missouri [20 CSR 2270-2.011 Educational Requirements]. Wrongfully depriving a candidate of their ECFVG certificate is equivalent to depriving them of licensure, considering they cannot apply for license without said certificate.

63. Defense is misconstruing *Staudinger*, erroneously implying that ECFVG is similar to ECFMG in every fashion. While they may have some similar functions, their operation, organizational structure and impact on the field and licensure are quite different.

64. As stated in *Staudinger v. Educational Comm. For Foreign Medical Graduates, No. 92-civ-8071-LJF, (S.D.N.Y. Apr. 27, 1993)* ECFMG is "a private, not-for-profit organization, which through its

16

certification program assesses the readiness of a foreign medical school graduate (FMSG) to enter residency or fellowship programs in the United States. ECFMG is not a subdivision of or affiliated with any governmental entity, its Board of Trustees receives no funding from any governmental entity, no individual from defendant New Jersey State Board of Medical Examiners (NJSBME) sits on ECFMG's Board of Trustees, and it sets its own standards for an FMSG's eligibility to take the United States Medical Licensing Examination (USMLE)."

65. ECFMG is a stand-alone entity who does not conduct testing but only verifies the candidates' eligibility to sit for the national licensing exam. Further, they are not part of or affiliated with any government entity, receive no government funding, and no individual from defendant New Jersey State Board of Medical Examiners (NJSBME) sits on ECFMG's Board of Trustees.

66. In contrast, the ECFVG is a critical decision maker through its exam process, and it is not a stand-alone entity but clearly part of AVMA; they are also board members on state veterinary boards across the country, affiliated with the USDE, and the military. They reside in state veterinary boards and associations, in government agencies across North America, while retaining their voting rights in AVMA; those who administer PAVE and NAVLE are also AVMA members; they receive government funds directly or indirectly, and make decisions on allocating government funds. Such entwinement with state entities, and its role in receiving and distributing government funds, makes AVMA (and ECFVG by proxy) a state actor subject to the Fourteenth Amendment.

67. According to the Defendants' own statement, AVMA, COE, and ECVFG are one entity that cannot "conspire against itself". If so, ECFVG cannot be a separate independent entity as they claim now. AVMA is a state actor because: They exercise a right or privilege created by the state or by a rule of conduct imposed by the state (paragraphs 59-62 in this response); they are a Title IV gatekeeper; there is excessive entwining with government agencies; they receive federal funding and make decisions on allocating federal funding. Therefore Defendants are subject to the fourteenth Amendment.

**Property Interest**

68. Defendants misinterpret and misrepresent *Elias*. As explained before ECFMG does not administer exams, and the case is about credentials verification. "Plaintiff attended the Universidad Autonoma de Guadalajara Medical School (UAGMS) in Mexico from 1987 to 1991. He admits he did not complete the two additional requirements of a clinical internship and community service, which are required to receive the Titulo de Medico Cirujano. Instead, he received the "Diploma de Medico Cirujano," which merely showed he completed the four-year didactic program."…" In 1994, plaintiff applied to ECFMG to take Step 1 of the USMLE. He certified that he had received the degree, "Medico Cirujano," from the UAGMS. Plaintiff failed the test. ECFMG subsequently learned that plaintiff was ineligible to take Step 1 because he did not have a final medical diploma within the meaning of ECFMG's eligibility requirements."…" On November 20, 2007, ECFMG notified plaintiff that it had rejected his application…" *Elias v. Educ. Comm'n for Foreign Med. Graduates, 2010 N.J. Super. Unpub. LEXIS 2663, 2010 WL 4340640 (N.J. App. Nov. 4, 2010)/*

69. The candidate in that case did not have a property interest simply because he was not a medical graduate to begin with, did not meet the criteria for the ECFMG program [thus ineligible to take step 1 of USMLE] and could not have received a medical license either in the US or in his home country. Dr. Gunawardana is not only a veterinary graduate but holds a license to practice in Sri Lanka.

70. In the instant case, Dr. Gunawardana has a license and therefore a property interest. Notably, the case doesn't state a *US* license. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548, 561 (1972).*

71. Years of education, practice in the field, service and income under her original licensure should convey legitimate entitlement to Dr. Gunawardana to licensure here in the US, or at least a fair, transparent and straightforward path towards it. She alleges the AVMA deprived her of a veterinary licensure she is

18

*entitled* to. They have not proven she is unqualified, and as a state actor they have certain obligations which they have violated, including due process, transparency and the Administrative Procedures Act.

72. "The Board has the power ultimately to protect the public from unqualified practitioners, but its exclusions, whether based on statute or the Board's own judgment, must be rationally related to that objective.  Since that is not the case here, I would conclude that the absolute bar imposed by the Board pursuant to the statute and regulation violates Dr. Linton's right to equal protection." *Linton v. Missouri Veterinary Medical Board., 988 S.W.2d 513 (Mo.banc 1999)*

73. Notably, the Plaintiff in *Linton* had not received her veterinary licensure at the time, and the Court found an *applicant's* right to equal protection was violated when she was treated differently from other applicants. Dr. Gunawardana is an applicant, already holding a license in Sri Lanka.

74. Also to consider that the policies of the ECVFG/COE/AVMA result in unequal treatment of all foreign veterinary graduates as opposed to US veterinary graduates and both foreign and US medical graduates, as described in detail in paragraphs 25,28,39,32,33 of Memo, and the Factual Background in this response. The ECFMG/USMLE process provides transparency and due process, and complies with the Administrative Procedures Act. Their fees are a fraction of the ECFVG or PAVE. All medical graduates, domestic or foreign, take the same licensing exam with the exact same pre-requisites.  Whereas foreign veterinary graduates are forced to repeat a number of additional tests, without due process, under non-transparent conditions, before they can take the licensing exam. These are the doctors that treat you and your family; the veterinarians that treat your pets and farm animals.  Why is there a more stringent onus on foreign veterinary graduates than anyone in the medical field? All Plaintiffs request is the same treatment received by other equivalent professionals. Lack of such equal treatment under AVMA's current policies is an obvious violation of equal rights under the 14th amendment.

## Conclusion

Plaintiffs believe that the Statement of a Claim requirement under Rule 8(a), Form of Pleading under rule 10(b), and Standing for David Seely, were all completely addressed in the Complaint, Memo, and Plaintiffs' Response to the Court's Order to Show Cause, with greater elaboration provided in the instant Response.

For the above reasons, Plaintiffs pray the Honorable Court to dismiss this Motion in its entirety and tax all costs to the Defendant.

If the Court deems the Complaint insufficient in any way, Plaintiffs respectfully request the Court's leave to file an Amended Complaint.

Respectfully Submitted,
/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent
Plaintiffs,
4308 Marion Garden Ln
Florissant, MO 63034
615-674-8461; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

## Certificate of Service

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded by way of electronic filing on the Court's ECF notice list from 4308 Marion Garden Ln, Florissant, MO 63034, on July 4, 2019.

/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent
