# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Subhadra Gunawardana and David Seely, pro se Plaintiffs,<br><br>v.<br><br>American Veterinary Medical Association (AVMA), Educational Commission for Foreign Veterinary Graduates (ECFVG) and Council on Education (COE)<br><br>Defendants. | Case No. 3:19-cv-00096-NJR |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Plaintiffs respectfully request the Court to deny this motion, in consideration of the following:

1. The subject matter of the complaint is much broader than a mere failing grade in a CPE section. The complaint pertains to violations of civil rights, equal protections and antitrust laws, and challenges how the CPE is conducted, and its existence in the first place [Dkt # 63].

2. The adverse actions suffered by Dr. Gunawardana are a direct result of AVMA's policies and procedures, which are discriminatory [Dkt # 63]. While much of the evidence for these allegations is available on public sites, complete and accurate answers to Plaintiffs' discovery requests are necessary to resolve issues of factual dispute.

3. Plaintiffs' discovery requests served on 9/21/19 included 7 interrogatories, 9 requests for production, and 74 requests for admission. Defendants submitted incomplete responses on 10/21/19, producing no documents, and objecting to all but one of the interrogatories [Exhibit 1].

4. In the current motion Defendants object to Plaintiffs' request for specific documents regarding the CPE, citing "unfair advantage to Plaintiff and to other candidates", "confidentiality and test security", and "undue time and expense".  These reasons are incorrect as explained below, and withholding these documents will be prejudicial to Plaintiffs.

5. The requested information is critical to resolve a key factual dispute in the complaint. Plaintiff's position is that she passed the anesthesia section and the failing grade was erroneous. Defendant has not proven she failed it. Since Defendant claims there is no videotape, the documents listed in Plaintiffs' RFPs # 4-8 are the only evidence that could shed any light on the matter.

6. Defendants' contention that "Dr. Gunawardana will have to retake and pass the anesthesia exam. It is impossible for Defendant to merely grant Dr. Gunawardana a passing grade." is erroneous. Defendants should either provide solid unbiased proof that Dr. Gunawardana failed the section, or they should grant her a passing grade. [Furthermore, Plaintiffs contend that the exam shouldn't exist in the first place, due to violation of equal rights of all its candidates.]

7. This factual dispute arises from Defendants' refusal/inability to produce impartial evidence to verify the events during the exam section in question.
   a. On numerous occasions AVMA's documents admit to videotaping CPE sections [Exhibit 2].
   b. Their initial reason for denying Dr. Gunawardana access to the videotape of her exam was "videotapes are not made available to candidates in accordance with ECFVG policy" and "video recordings will not be used to reverse failing scores".
   c. As her appeals progressed, AVMA's reason changed to "there is no videotape".
   d. Some appeal committee members considered the videotape to be important evidence, and even requested said videotape [example in Ex.2 page 4].

If Defendant is unable/unwilling to produce this videotape evidence, Plaintiffs should have the right to review any and all available evidence regarding the disputed matter, i.e. the documents for which Defendant requests the protective order.

8. Dr. Gunawardana requested these documents to help prove her position in her previous appeals to the AVMA. Defendant denied the requests, citing ECFVG policy. However, in response to RFA #35: "Admit that ECFVG policies specifically prohibit candidates from obtaining any records from their CPE sections, including the candidates' reports, examiners reports, videotapes etc." Defendant answered "Deny" with no qualification; implying that candidates *can* receive all this documentation on request [Exhibit 3]. Thus, going by Defendants' own responses, there should be no need for a protective order. Furthermore, they already produced redacted versions of some of the documents for which they are now requesting the protective order.

9. Importantly, the limited production Defendants made so far corroborates Plaintiffs' position. In her initial appeal to the AVMA, Dr. Gunawardana pointed out that she completed the tasks exactly as required in the 2017 candidate manual of administration [MOA], and that the examiner acted outside the instructions of the MOA. Some of Defendants' internal emails [Exhibit 4] show that ECFVG officials were well aware of the discrepancy between the MOA and the examiner's decision; they chose to uphold the failing grade despite the discrepancy; and planned to modify the MOA. Thus, even in the absence of a videotape, defendant's internal emails corroborate Plaintiffs' version of events. Interestingly, critical parts of these email strings are missing, as are all attachments. A complete unedited version would shed more light on the disputed matters.

10.    Defendants repeatedly mention and object to producing "grading keys and answers", which Plaintiffs did not request. There are no such things here, since this is a practical exam testing hands-on

skills, with detailed instructions on exactly what the candidate is expected to do, including a list of all errors that would result in failure/dismissal [Exhibit 5: CPE MOA- Anesthesia]. Candidates know every step of the exam before they come in, and either perform the tasks correctly and in time, or not. There should be no mysterious "answer keys" that can give any candidate an unfair advantage. This applies to any practical section in the CPE with pass/fail grades only, such as surgery or anesthesia.

11. If the anesthesia exam is conducted fairly, nothing in the exam records or instructions can be harmful to the CPE program if disclosed. The only possible reason the disclosure of documents can harm the AVMA is if they contain inappropriate or unethical material that confirm Plaintiffs' allegations on civil rights violations [such as instructions to fail specific candidates/groups, or to conduct the exam differently from how it is described to candidates in the MOA; or records showing adverse actions taken for reasons other than those specified in the MOA].

12. Defendants cite *Adams v. City of Chicago*, 1995 U.S. Dist. LEXIS 9913, at *2 (N.D. Ill. July 13, 1995). Stating that, "As in *Adams*, here, the AVMA cannot produce examination questions, answer key, grading criteria, examiners' instructions, and Dr. Gunawardana's examination documentation without harming the integrity and security of the examination."

13. This seems to be an intentional attempt to mislead, considering that the AVMA should be well aware of the nature of their own exams. The Anesthesia section of the CPE is nothing like the officers' test in *Adams.* Unlike the officers' test which consists of two parts of multiple choice questions and one oral exam, the CPE Anesthesia exam is an on-site evaluation of hands-on practical skills, as explained in paragraphs 10 and 11. Such an exam should have no "answers and grading keys" that can compromise test security, and nothing in the examiners' notes or instructions could possibly give an advantage to a candidate. If it could, that is further proof of irregularity/bias.

14. Plaintiffs' agreement on 11/20/2019 was to review a redacted version and see if it would satisfy their discovery requests. Defendants recently produced part of the documents in question. However, said documents being incomplete and heavily redacted makes it impossible to verify much of the necessary information.

   a. The limited amount of unredacted information shows clear evidence of deception by the ECFVG. The score report ECFVG had previously provided to Plaintiff does not match the examiner's notes [relevant pages shown in Exhibit 6]. The score report says "candidate failed to inflate the cuff appropriately within the time allotted", whereas the examiner's notes say "did not check cuff pressure" and "failed to leak test the ET tube cuff within the 5 minute limit", a task the MOA does not list for the 5 minute limit, or at all. Thus, the examiner had acted outside the authority of the 2017 MOA, and issued a failing grade for a task not required therein. The examiner's notes show other improprieties as well. Importantly: ECFVG wrote Dr. Gunawardana's score report to match the MOA instead of the examiner's notes. Following her appeal, ECFVG officials admitted in their internal emails that the examiner acted outside the MOA but chose to uphold the failing grade [Exhibit 4]. Thus, ECFVG knowingly acted against their stated procedures several times.

   b. Plaintiffs suspect that the redacted sections contain additional critical information to confirm their allegations, such as examiners being instructed to act outside the MOA or to fail certain candidates regardless of their performance. Considering that all tasks to be completed by candidates is described clearly and in detail in the MOA, there is no logical reason to have hidden instructions for examiners.

   c. Examiners' names are redacted, as are all information about examiners. This is necessary and important information, considering that the examiners may need to be deposed by both parties. Defendant produced several email communications connected to Dr. Gunawardana's CPE application and appeal, which included emails within the ECFVG, between ECFVG and

Plaintiff, and between ECFVG and the COE. Notably, any and all communications with CPE examiners are absent. Thus, it appears that Defendant is making an active effort to hide the examiners' identities.

15. Due to the very low representation of foreign and/or non-white individuals in the US veterinary field compared to other equivalent professions, Plaintiffs allege that there is active discrimination. Such discrimination is reported in the field: *Brar and others v. B.C. Veterinary Medical Association and Osborne (No. 22), 2015 BCHRT 151,* [a case which ruled that an English proficiency test was a human rights violation, and showed predominant discrimination toward one group in the veterinary field].

16. While existing evidence shows discrimination in AVMA's policies, it is important to verify whether and how discrimination occurs within the CPE. For example, it is possible that ECFVG instructs examiners to fail certain candidates or groups, or that ECFVG selects specific examiners with a habit of failing certain candidates or groups, *U.S. v. Brennan 650 F.3d 65 (2d Cir. 2011).* The material requested by Plaintiffs [instructions provided to examiners, and communications between examiners and ECFVG staff, before, during and after the exams] is critical to verify the presence/absence of such discrimination within the exam process.

17. It is interesting that the same examiner failed Dr. Gunawardana on two occasions in the CPE anesthesia sections [2015 and 2017] citing the same fatal flaw of not securing the ET tube within 5 minutes, a task she has successfully completed on all other occasions including her CPE anesthesia section in 2016. Plaintiff also noticed the same examiner failing at least one other candidate citing the same fatal flaw. Thus, the information requested including examiners' identities and records would be critical to verify a pattern of discrimination.

18. Unlike in *Adams*, Defendants have provided no specific evidence on how or why the disclosure of this information would cause undue burden/expense, or harm the integrity of the exam.

19. Defendant repeatedly mentions unfair advantage to "Plaintiff when she retakes the exam" and to "unlimited numbers of candidates who may gain access to these materials". Both implications are incorrect, as explained below.

20. Plaintiff does not intend to retake the exam under the current conditions, which is the whole point of this lawsuit. AVMA currently administers this exam with no transparency, fairness or oversight, in a way that is heavily biased against its candidates. The suit intends to shed light on these problems and correct them for the benefit of the whole profession. Re-taking the exam under the same conditions would not only defeat that purpose, but would make the Plaintiff an easy target for retaliation.

21. The complaint challenges the constitutionality of AVMA policies, and the very existence of the ECFVG exams which treat foreign graduates unequally to their domestic counterparts [Dkt #63]. Notably, the ECFMG eliminated their equivalent exam decades ago, and now foreign and domestic medical graduates take the same exam. Thus, Plaintiffs contend that Dr. Gunawardana should not have had to take the CPE in the first place. Furthermore, since AVMA cannot prove she failed this section, they should award her the certificate.

22. The injunctive relief sought in the complaint includes revamping the whole program in such a way that the equal rights of all veterinary graduates, both foreign and domestic, are protected. Unless Defendants can prove that the ECFVG program in its current form does not violate equal rights, they will be required to overhaul it anyway. Thus, the need to maintain their current secretive nature is not a valid reason to withhold these documents and thereby prejudice Plaintiffs' ability to prove their claims.

23.   Plaintiffs have no intention of sharing the discovery responses with anyone, and the discovery requests specifically stated that Plaintiffs would take all precautions to protect personal/confidential information when applicable [Defendants' Motion Exhibit 1].

24.   Defendants also mention undue time and expense in having to re-write the anesthesia exam. First, such re-writing is unnecessary as explained earlier.  Second, expenses for the ECFVG program are borne not by the AVMA but by the candidates themselves, as evidenced by the ECFVG fees that are over 5 times greater than the ECFMG/USMLE, and keep increasing each year. Finally, eliminating the ECFVG exams [and requiring *all* graduates, foreign and domestic, to take the same exams] would save them the time/expense of doing it at all.

25.   In summary, the documents requested are critical to resolve key factual disputes in the complaint, and would either confirm or disprove some of Plaintiffs' allegations. Release of these documents would not harm the Defendants, but would actually help them if there are no legal or ethical violations in their exam practice.

   Wherefore, Plaintiffs pray this Honorable Court to deny the Motion for Protective Order and tax the expenses to Defendants.

   January 20, 2020

Respectfully Submitted,
/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent
Plaintiffs,
4308 Marion Garden Ln
Florissant, MO 63034
615-674-8461; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served upon all parties via electronic filing with the Court's ECF system, on January 20th, 2020.

/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent
