## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

Subhadra Gunawardana and David Seely )
)
Plaintiffs, )
)
v. ) Case No. 3:19-cv-00096-NJR
)
American Veterinary Medical Association )
(AVMA), Educational Commission for Foreign )
Veterinary Graduates (ECFVG) and Council on )
Education (COE) )
)
Defendants. )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**

**MOTION TO COMPEL DISCOVERY**

### I.  Introduction

This lawsuit stems from adverse actions taken against Dr. Subhadra Gunawardana ["Gunawardana"] by the Defendant AVMA during the ECFVG certification process, particularly the Clinical Proficiency Exam ["CPE"] and the subsequent appeals. As alleged in the amended complaint, these adverse actions result from improprieties in AVMA's policies and procedures, which violate a number of federal and state laws [Dkt. #63]. While AVMA's written policies and other publicly available evidence confirm most of the allegations, discovery is necessary to resolve specific issues of factual dispute.

Having complied with the Scheduling and Discovery Order dated 09/10/19 [Dkts. #37; 37-1], and pursuant to the Court's order dated 5/4/20 [Dkt. #76] and Federal Rule 37, the Plaintiffs hereby move the Court to compel the Defendant to provide complete and truthful answers to all of Plaintiffs' discovery requests.

## II.  Legal Standards and Guidelines

1. Rule 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. "*The relevance standard that governs discovery, as laid out in Rule 26, is very broad and is broader than the relevance standard that pertains to trial and admissibility issues. See Oppenheimer Fund v. Sanders, 437 U.S. 340, 350, (1978) ("relevance [in discovery] has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). "For discovery purposes, relevance is broadly construed." American Hardware Mfrs. Ass'n v. Reed Elsevier Inc., 03 C 9421, 2007 WL 1610455, at \*3 (N.D. Ill. Feb. 13, 2007) (citing Behnia v. Shapiro, 176 F.R.D. 277, 280 (N.D. Ill. 1997))*." <u>Williams v. City of Chicago, No. 06 C 1243 (N.D. Ill. Sep. 12, 2007).</u> "*Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. Rubin v. Islamic Republic of Iran, 349 F.Supp.2d 1108, 1111 (N.D.Ill.2004).*" <u>Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447 (N.D. Ill. 2006).</u>

2.  General boilerplate objections cause undue delays in discovery, and Courts have repeatedly admonished against them.  "*[g]eneral objections should rarely be used after December 1, 2015 unless each such objection applies to each document request.*" <u>Fischer v. Forrest, 2017 U.S. Dist. LEXIS 28102</u>. "*It is well established that such generalized boilerplate objections have no effect. Courts have repeatedly warned litigants who oppose discovery that their "burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is*

*vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." In re Peregrine Fin. Grp. Customer Litig., No. 12 C 5546, 2015 U.S. Dist. LEXIS 34829, \*10 (N.D. Ill. Mar. 20, 2015) citing Burkybile v. Mitshubishi Motors Corp., 2006 WL 2325506, at \*6 (N.D. Ill. Aug. 2, 2006).*

3.   "*A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. Fed.R.Civ.P. 37(a)(2)-(3). The Federal Rules of Civil Procedure provide a court with broad discretion in resolving discovery disputes. Meyer v. Southern Pacific Lines, 199 F.R.D. 610, 611 (N.D.Ill.2001). A motion to compel discovery is granted or denied at the discretion of the trial court. Id. In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." Wilstein v. San Tropai Condominium Master Association, 189 F.R.D. 371, 375 (N.D.Ill.1999)*." *Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447 (N.D. Ill. 2006).*

4. Regarding requests for admissions, Rule 36(a)(1) states: "*Scope*. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either…" and Rule 36(a)(4) states: "*Answer*. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as

a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

### III. Discovery Issues

5. This motion pertains to the interrogatories #4-7, requests for production ["RFPs"] #1-4;6-8, and requests for admission ["RFAs"] #3-15;19-39;41-44;47-52;57-67;71-73 from Plaintiffs' first set of discovery requests, which Defendant has not adequately answered [Exhibits 1-3].

6. Based on the ECFVG/CPE appeals policies and Gunawardana's experience with her own appeal, Plaintiffs allege that the CPE appeal process is consistently biased against candidates, and few or no candidates ever succeed on appeal [Dkt. #63, paragraphs 10-19;23-30;54,55,85]. RFPs #1&2 seek to verify this allegation [Exhibit 1]. A complete and truthful production would either confirm that the appeal process is indeed unfair and candidates cannot succeed, or show that the plaintiff's experience was an isolated incident.

7. Defendant's answer to both RFPs #1&2 stated: "*Defendant objects to this Interrogatory on the basis that it is overbroad, not narrowed in time or scope, imposes an undue burden on Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Interrogatory as it violates attorney-client privilege, the work product doctrine, and inappropriately requests the disclosure of other candidates' personal information.*" [Exhibit 2].

8. Contrary to the aforementioned objections, each of the RFPs #1&2 specifies a narrowed date range and content [1/1/12 through 12/31/18; Petitions for reconsideration and petitions for review submitted by CPE candidates, COE's recommendations and ECFVG's decisions on said petitions];

these records are part of Defendants' day-to-day business; and the information contained therein will prove or disprove specific factual allegations as explained in paragraph 6 above. All requested information is necessary to verify this issue, and any additional limitation in time or scope would defeat the purpose. Defendant has not specified how the requests are overbroad or impose undue burden. Plaintiffs never requested disclosure of candidates' personal information; any personal information in relevant documents can always be redacted; and Plaintiffs had expressly stated that they would protect all personal information [Exhibit 1, page 3].

9. Attorney-client privilege and the work product doctrine should not apply here, since all requested documents pertain to events that occurred prior to the filing of this lawsuit. Said documents being part of Defendants' day-to-day business, they would not have been created in preparation for any suit, including this one. Even if counsel had looked over some documents, that alone does not invoke the protection of the doctrine. "*There is a distinction between precautionary documents "developed in the ordinary course of business" for the "remote prospect of litigation" and documents prepared because "some articulable claim, likely to lead to litigation, [has] arisen." Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1120 (7th Cir. 1983) (emphasis added) (alteration in original) (internal quotation marks omitted). Only documents prepared in the latter circumstances receive work-product protection.*" Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612 (7th Cir. 2009). Even if some of these documents had been used in previous litigation, they were not created as work product or by attorneys, and cannot be protected now. Furthermore, the protection should be waived because Defendants never submitted a privilege log. "*The argument is curious since any absence of specificity stemmed from his refusal to provide a privilege log to support his generalized claim of privilege.*" United Automobile Insurance Company v. Veluchamy, 747 F. Supp. 2d 1021 (N.D. Ill. 2010).

10.    RFP #3 requested all lawsuits filed by ECFVG candidates against the AVMA/COE/ECFVG, from the inception of the ECFVG program to the present. Defendant objected "*on the basis that it is overbroad, not narrowed in time or scope, imposes an undue burden on Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Interrogatory as it violates attorney-client privilege, the work product doctrine, and is equally accessible to Plaintiff as it is to Defendant.*" [Exhibit 2]

11.    RFP #3 is narrowed in scope, asking only for lawsuits against the Defendant(s) filed by ECFVG candidates. No data on such lawsuits come up on public databases accessible to Plaintiffs, suggesting that the number of lawsuits is small despite the relatively long timeframe.  Therefore, providing this information would not pose any undue burden, and Defendants' response suggests the presence of such lawsuits.  RFP #3 is relevant to understand whether the issues presented in the instant action have been litigated before, and if so, the factual and expert witnesses who testified then may have useful information for the current action. Furthermore, Rule 26(b)(1) does not require material to be admissible in order to be discoverable.

12.    The attorney client privilege and work product doctrine are upheld by courts in instant matters, not in past litigation already disclosed to the public. Simply requesting a list of past lawsuits does not violate these doctrines.  "*The work product doctrine is meant to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." Adkins Energy, LLC v. Farmland Mutual Insurance Company, No. 04 C 50482 (N.D. Ill. May 6, 2009) quoting Williams v. Musser, 1995 U.S. Dist. LEXIS 784, at \*5 (N.D. Ill. Jan. 23, 1995) "Because it made the exhibit available to adversaries, Adkins*

waived the work product privilege to which the exhibit was otherwise subject." _Adkins Energy, LLC v. Farmland Mutual Insurance Company, No. 04 C 50482 (N.D. Ill. May 6, 2009)._ The doctrine is waived when information is made available to adversaries. Such waiver should apply to anything in the public record.

13.    RFPs #4,6,7&8 pertain to the CPE anesthesia sections taken by Gunawardana [Exhibit 1]. Answers to these requests are critical to resolve a key factual dispute, i.e. whether the failing grade in question was erroneous and non-compliant with the Manual of Administration. In addition, these documents may reveal discriminatory practices extending beyond AVMA's written policies that are publicly accessible. Defendant moved for a protective order for these documents [Dkts. #46&64], and during Gunawardana's previous appeals to the AVMA, they had refused some of the same documents seemingly against their own rules [Dkt. #66, paragraphs 7&8; Dkt. #63-1, page 8]. Defendants' objections to these RFPs are not valid, as described in detail in Plaintiffs' response to Defendants' motion for protective order [Dkt. #66]. Following this Court's denial of said motion [Dkt. #75], Defendant expressly stated that they would not produce these documents. Such long-standing and steadfast non-compliance suggest that these documents confirm key allegations in the complaint.

14.    The documents currently being withheld from RFPs # 4,6,7&8 include the following:

a.    All instructions provided to examiners in the CPE anesthesia sections in question by the AVMA, COE and/or ECFVG, in the form of emails, other communications, examiners' handbooks, etc.

b.    Unredacted version of the examiners' records previously produced by Defendant.

c.   A complete version of the correspondence within and between the COE, ECVFG, AVMA, and examiners, pertaining to the exam and appeals in question, that includes all email strings and attachments etc.

15.   As alleged in the complaint [Dkt. #63, paragraphs 54,62-65,68,72,86], the very small representation of foreign veterinarians in the US is a direct result of AVMA's discriminatory policies and practices.  Plaintiffs believe that the number of ECFVG certificates issued is a minute fraction of the total number of candidates enrolled in the program, and that candidates who re-take the full CPE are forced repeat the process many times due to flaws in the CPE policies [Dkt. #63, paragraph 37]. AVMA does not show these statistics to the public, in contrast to the USMLE website which publishes annual numbers of test-takers and pass rates for each step of the exam. While the AVMA website claims to have awarded 6,691 ECFVG certificates from 1/1/73 through 12/31/19, it does not show how many applicants enrolled in the program in this 47-year period, or what numbers/percentages passed each step. To confirm or disprove the allegations, it is necessary to review the relevant statistics backed by evidence, as requested in interrogatories 4-7 [Exhibit 1].

16.   In response to each of the Interrogatories #4,5,6&7, Defendant stated the same set of objections as follows: "*Defendant objects to this Interrogatory on the basis that it is overbroad, not narrowed in time or scope, imposes an undue burden on Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.*" [Exhibit 2].

17.     In fact, interrogatories 4-7 specify narrowed content and date ranges for each query, and only request routine information generated as part of Defendants' day-to-day business. Therefore, it should not pose any undue burden. Equivalent organizations such as USMLE regularly make such information available to the public on their websites.  As explained in paragraph 15, all requested information is necessary to verify the allegation of discriminatory practices in the ECFVG program that extend beyond their written policies, and therefore would lead to admissible evidence. Furthermore, Rule 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

18.   Since Defendant has not filed an answer to the original complaint or the amended complaint, their position on most issues has not been stated. Plaintiffs' Requests for Admission sought to minimize potential dispute by confirming the factual issues already known to both parties, and by clarifying specific factual issues relevant to the case better known to Defendant than Plaintiffs.

19.     Instead of providing clarity, Defendants' responses to the RFAs cause more confusion, and bring their credibility to question [Exhibit 3].

20.     First, Defendant denied many RFAs  [#3-5,7,9,10,19,20,22,23,32,34-39,41-43].  These denials contradict existing evidence including AVMA's own publications and previous statements,

and none of the denials are accompanied by a good faith qualification. Thus, these responses violate of Federal Rule 36(a)(4).

21.    RFAs #8,14,15,21,47-51,73 request acknowledgment of information stated in AVMA's own written policies, documents, newsletters etc., regarding AVMA's gatekeeping role in the veterinary profession through its various functions, and AVMA's relationship to government agencies that regulate the veterinary profession.  The relevance of this information is made clear in the complaint [Dkt. #63, paragraphs 10,45-52,75-81].  Defendant refused each admission stating various objections [Exhibit 3]. For example:

a.    RFA #14 requests admission of  a statement quoted directly from the AVMA's website: "Admit that the ECFVG certification administered by the AVMA is accepted by all state veterinary regulatory boards and the federal government as meeting, either in part or full, the educational prerequisite for licensure or certain types of employment, respectively."  [Exhibit 4]. Defendant answered: "*Defendant objects to this request as vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as it seeks a legal conclusion.*"

b.    Defendant objected to RFAs #8,14,15,21&73 on the basis "*it seeks a legal conclusion*", when in fact the RFAs only seek acknowledgement of information presented on public websites including AVMA's own website.  Furthermore, Rule 33(a)(2) provides that "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…", while Rule 36(a)(1) provides that "A party may serve on any other party a written request to admit, for purposes

of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either…"

    c.   Defendant objected to RFAs #47-51, claiming that "*it seeks information outside its knowledge and control and not reasonably calculated to lead to the discovery of admissible evidence.*" The requested information is well within AMVA's knowledge as it directly concerns AVMA membership, and the relevance of this information is clearly stated in the complaint [Dkt. #63, paragraphs 51,74,80,97].

22.   In their answers to RFAs #19,20,33-39, and 41-43, Defendant directly contradicted their own statements made elsewhere, including the arguments they brought in their motion for protective order. For example:

    a.   RFAs #19 and 20 request admission of the 90-day restriction in ECFVG's disability policy, and the consequences to candidates as a result of such restriction.  Defendant answered "*Deny*" to both, implying that their disability policy has no such restriction and no negative consequences to candidates. However, AVMA denied Gunawardana's accommodation request in October 2016 citing the exact restriction mentioned in RFAs #19 and 20 [Dkt. #63, paragraphs 34,100-102].

    b.   RFAs #34-39 and 41-43 request admission of various restrictive clauses in ECFVG appeal policies that make it difficult for review panels to properly investigate candidate petitions, and impossible for candidates to prevail on appeal, as described with evidence in the complaint [Dkt. #63, paragraphs 23-30]. Defendant denied all requests without qualification, contradicting their own written policies.  For example:  In response to RFA #35: "Admit that ECFVG policies specifically prohibit candidates from obtaining any

records from their CPE sections, including the candidates' reports, examiners reports, videotapes etc." Defendant answered "*Deny*", implying that candidates *can* receive all this documentation on request.  However, when Gunawardana requested these documents to help prove her position in her previous appeals to the AVMA, they had denied the requests citing ECFVG policy. They subsequently moved for a protective order for the same documents.

23.   RFAs #6,11-13,24-31,44,47-52,57,58 request to confirm various facts presented in public websites easily accessible to anyone.  Defendants repeatedly object on the basis "*it seeks information outside its knowledge and control*" in violation of Federal Rule 36(a)(4).

24.   Defendants objected to RFAs #6,14,47-52,57-67,71&72 as "*not reasonably calculated to lead to the discovery of admissible evidence*."  On the contrary, all these RFAs are relevant and could lead to admissible evidence, as explained below.

   a.   Backed by existing evidence, the complaint alleges that the AVMA holds ultimate decision-making power regarding who can enter the profession of veterinary medicine in the USA, through its monopoly on accreditation of veterinary education programs/institutions and certification of graduates from non-accredited programs/institutions [Dkt. #63, paragraphs 3,10,42-53,75]. RFA #14 seeks to confirm part of this allegation, and requests acknowledgment of specific information presented in AVMA's own website.

   b.   The complaint further alleges that the AVMA is a state actor, as confirmed by publicly available evidence [Dkt. #63, paragraphs 71-81]. RFAs #47-52 seek to verify one aspect

of this allegation, i.e. excessive intertwining of AVMA with state and federal regulatory bodies. RFA #6 requests admission of a fact stated in publicly available news articles including AVMA's own. These RFAs would also confirm/eliminate additional evidence for AVMA's monopoly on the veterinary profession.

c.   The complaint further alleges antitrust violations by the AVMA, in conspiracy with other organizations including the Banfield Hospitals and certain distributive model veterinary colleges [Dkt. #63, paragraphs 87-95]. Based on publicly available evidence, RFAs #57-67,71&72 seek to clarify AVMA's position on parts of this allegation.

25.   Thus, many of the direct objections stated are broad, and not specific or customized to each request.  In addition, Defendants stated generalized boilerplate objections to all discovery requests, in violation of Federal Rules 33(b)(3), 33(b)(4), 34(b)(2)(B), 34(b)(2)(C), 36(a)(4) and 36(a)(5) [Exhibits 2 &3].  The numerous contradictions between Defendants' responses to these discovery requests and their statements made elsewhere, suggest an intentional attempt to mislead.

26.   *"Purdue, who bears the burden of proof to show that the information sought is not subject to discovery, did not submit a brief in response to Taleyarkhan's motion. The court cannot accept Purdue's broad, boilerplate objections without further explanation of why the information sought is not subject to discovery." Taleyarkhan v. Purdue Univ. Case No. 4:10 cv 39, at \*8 (N.D. Ind. Feb. 28, 2013)*

27.   *"If the party from whom documents or interrogatory answers are requested objects to their production, that party has the burden to show why the request is improper. See Rule 34(b); Gile*

13

*v. United Airlines, Inc., 95 F.3d 492, 495 (7th Cir. 1996); In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. at 337. That burden cannot be met by a reflexive invocation of "the same baseless, often abused litany" that the requested discovery is "vague, ambiguous, overly broad, unduly burdensome," or that it is "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Swift v. First USA Bank, 1999 WL 1212561 (N.D.Ill. 1999). Despite courts' repeated admonitions that these sorts of "boilerplate" objections are ineffectual, their use continues  unabated, with the consequent institutional burdens, Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir. 1987); Channell v. Citicorp Nat. Services, Inc., 89 F.3d 379, 386 (7th Cir. 1996), and the needless imposition of costs on the opposing party. They are "`tantamount to not making any objection at all.'" E.E.O.C. v. Safeway Store, Inc., 2002 WL 31947153, *2-3 (N.D.Cal. 2002). Wendt v. Offshore Trust Service, Inc., No. 08 C 3612 (N.D. Ill. Aug. 3, 2010)*

28.    As shown above, all of Plaintiffs' discovery requests are relevant to the case, and expected to resolve specific factual allegations in their complaint. Complete and accurate responses will serve the interests of all parties by minimizing issues of factual dispute.

29.    Since it has been 9 months since the Defendants received the discovery requests, and the responses are far from complete, Plaintiffs need the Court's help to get discovery completed without further delay.

**IV. Relief**

Wherefore, the Plaintiffs pray this Honorable Court enter an order compelling the Defendant to:

    a.    Produce all documents in response to requests for production #1-4 & 6-8, including the items withheld pending a protective order which was denied by the Court.

    b.    Answer the interrogatories #4-7 with complete and accurate information as requested, and

    c.    Provide truthful answers to the RFAs # 3-15;19-39;41-44;47-52;57-67;71-73.

Plaintiffs further request all costs be taxed to the Defense, and any other relief the Court deems fit.


June 19, 2020

<div style="margin-left:50%">

Respectfully Submitted,
/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent
Plaintiffs,
4308 Marion Garden Ln
Florissant, MO 63034
615-674-8461; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

</div>


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded to all parties by way of electronic filing on the Court's ECF notice list on June 19, 2020.

<div style="margin-left:50%">

/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent

</div>