# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Subhadra Gunawardana and David Seely<br><br>Plaintiffs,<br><br>v.<br><br>American Veterinary Medical Association (AVMA), Educational Commission for Foreign Veterinary Graduates (ECFVG) and Council on Education (COE)<br><br>Defendants. | Case No. 3:19-cv-00096-NJR |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs state the following in support of their Response in Opposition to Defendants' Motion to Dismiss.

## PROCEDURAL BACKGROUND

1. Plaintiffs filed their original complaint on February 1, 2019. Defendant moved to dismiss the original complaint on June 4, 2019 [Dkts. #22 and 23] Plaintiffs filed a detailed response to said motion on July 4, 2019 [Dkts. # 27 and 28].

2. On November 30, 2019, Plaintiffs moved to amend the complaint. This Court granted said motion on January 06, 2020, following which Plaintiffs filed the First Amended Complaint [hereafter "FAC"; Dkt. #63] on January 12, 2020.

3. Defendants did not file an answer or other responsive pleading to the FAC by the deadline, which was January 29, 2020.

4. The instant motion [Dkt. #80] was filed on June 22, 2020, almost 5 months past the deadline, without good cause for delay, and without the Court's leave.

1

**ARGUMENT**

5. Pursuant to Local Rule 15.1, the FAC was submitted on November 30, 2019, approved on January 06, 2020, and filed on January 12, 2020. Therefore, this Court first reviewed the FAC before denying Defendants' original Motion to Dismiss as moot. It logically follows that the Court deemed any deficiencies in the original complaint to be corrected.

6. Every point brought in Defendants' original motion to dismiss was fully addressed in Plaintiffs' response to said motion [Dkts. #27 & 28] and in the FAC. Defendants' instant motion does not rebut those arguments, and largely repeats the same points presented in their original motion. Plaintiffs will address these issues again in the "Analysis" section, referring to previous filings as necessary to conserve space.

7. It has taken over eleven months to resolve the initial discovery requests Plaintiffs submitted on September 21, 2019. Defendants have been steadfastly uncooperative with discovery, through actions such as submitting non-specific blanket objections, filing two motions for protective orders without good cause, repeatedly failing to produce pre-negotiated documents, and not following the Court's orders to produce documents. Plaintiffs had to request the Court's intervention on two occasions [Dkts. #56 and 74], followed by filing a motion to compel discovery with Court's permission [Dkt. #77]. Importantly, all evidence received so far corroborates Plaintiffs' allegations, including Plaintiffs' version in a critical issue of dispute regarding the exam in question.

8. The instant motion is nearly identical to Defendants' original motion to dismiss. After many months of obstructing discovery, Defendant filed this motion three days after Plaintiffs filed their motion to compel. Shortly after Plaintiffs requested and received an extension to respond, Defendant inundated Plaintiffs with interrogatories, requests for admission and document production, and notices of deposition, the deadlines for which fall within the same time-frame as

that for Plaintiffs' response to the instant motion to dismiss. Considering that Defendants had over 1.5 years to conduct discovery; the original deadline for completion of discovery was May 8, 2020; and the new deadline was not set at the time they sent these requests, their choice to conduct discovery at this particular time seems to be an attempt to vex and harass.

9. Thus, the filing of the instant motion that contains little or no substance, at this particular time, is prejudicial to Plaintiffs and wastes the Court's time. Rather than a bona fide objection to the adequacy of the FAC, this motion appears to be an intentional attempt to obstruct the progression of the case.

10. Defendant failed to timely answer or otherwise plead in response to the FAC despite having access to it since November 30, 2019, and despite receiving several reminders since its filing. As of the date of this filing, 19 months since the initiation of this suit, both the original complaint and amended complaint remain unanswered.

11. Due to the aforementioned reasons, this motion should be struck.

## STANDARD OF REVIEW

12. Courts have repeatedly denied dispositive motions that were untimely: "Based on the foregoing analysis, it appears that the defendants' motion to dismiss is untimely." *Shield Technologies Corp. v. Paradigm Positioning, LLC,* 908 F. Supp. 2d 914 (N.D. Ill. 2012). Especially if they did not seek leave of the Court. "Harris did not have leave to file her motion to dismiss and therefore it will be denied as untimely." *Jimerson v. Harris*, No. 2:15 CV 178, at *4 (N.D. Ind. Jan. 5, 2018).

13. "No Motion was made for leave to file the out of time Answer, and it was filed without leave of court. Often, late, unauthorized filings like this will not be considered. See Seaton v. Jabe, 992 F.2d 79, 81 (6th Cir. 1993)("We also agree with the district court that Seaton's late filing,

without leave of court upon a showing of good cause, means that there was no viable removal petition before the federal court and, as a result, the state court was never divested of jurisdiction over the matter."); Howard v. MMK Enterprises, LLC, 2018 WL 1941679, at *1 (E.D. Cal. 2018)("Finding no justification for the delay, the court will not consider this late filing."); Thomas v. Maryland, 2017 WL 6547733, at *9 (D. Md. 2017)("Having received no request for leave of court to excuse the late filing, or an explanation for the late filing, the Court will strike Plaintiffs' Opposition.")." *Bd. of Trs. of Pipe Fitters' Ret. Fund v. Commercial Cooling & Heating, Inc*, No. 13 C 7731 at *2 (N.D. Ill. May 28, 2019)

14. A plaintiff does not have an absolute right to amend and must first seek and obtain the court's permission to file a proposed amendment. First Robinson Savings & Loan v. Ledo Construction Co., 210 Ill. App. 3d 889, 892, 569 N.E.2d 304, 306 (1991); *In re Purported Election of Durkin,* 299 Ill. App. 3d 192, 700 N.E.2d 1089 (1998).

15. Courts may grant or deny leave to amend a complaint. "Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend the complaint] when justice so requires." This is a broad allowance with few enumerated exceptions. See Bethany Pharmacal Co., Inc. v. QVC, Inc., 241 F.3d 854, 861 (7th Cir. 2001). One such instance when the court "need not allow an amendment" is "when the amendment would be futile." Id." *Lester v. Nestle USA, Inc.*, No. 1:11-cv-01441-MJD-TWP (S.D. Ind. Mar. 30, 2012).

16. "Normally, the Court would give Plaintiff the opportunity to correct this mistake by amendment. As explained below, however, even if Plaintiff had named a proper defendant, his ADA and RA claims would fail. Accordingly, amendment would be futile." *Torres v. Harris*, No. 19-cv-00768-NJR at *3 (S.D. Ill. Sep. 16, 2019)

17. Current Federal Rules do not require code pleading in a complaint, only factual allegations that give the defendant fair notice of the claim for relief and show the claim has substantive

plausibility: "The conclusion that Megan needed to allege in her complaint facts supporting specific legal theories was problematic, to say the least. Even after Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Federal Rules of Civil Procedure do not require code pleading. Under the old pre-Rules regime of code pleading, plaintiffs were required to plead the elements of a cause of action along with facts supporting each element. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.) (describing code pleading as requiring "the pleader [to] set forth the 'facts' constituting a 'cause of action' "). Under the modern regime of the Federal Rules, the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has "substantive plausibility." Johnson v. City of Shelby, ––– U.S. ––––, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (per curiam). As explained in Johnson: Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015)

## ANALYSIS

18. Defendant states "In the First Amended Complaint, Plaintiffs add additional allegations, but fail to remedy the legal deficits in pleading their causes of action." without specifying or describing what deficits were not remedied. They then proceed to repeat many paragraphs from the original motion, which were already fully addressed in previous filings.

19. Defendant claims that the differences between the medical and veterinary fields and foreign graduate requirements "have no bearing on this matter". On the contrary, the simplest way to highlight unethical and discriminatory policies in a given profession is a direct comparison to the

closest equivalent profession. Such comparison is particularly relevant in demonstrating equal rights violations against several groups, as described in counts II, III, IV and VI, and the ADA violation described in counts VII and VIII. Furthermore, the ECFVG program is modeled after the ECFMG program, and veterinary exams such as NAVLE are produced by the National Board of Medical Examiners, the producer of USMLE.

20. All claims in the FAC arise from the same set of circumstances, and the resulting injuries are actionable under several counts. Defendants' wrongful conduct, and the harm suffered by Plaintiffs as a result, are described in detail in the factual background section of the FAC. Stating a claim should not require repetition of these facts under each count, contrary to what the motion suggests.

## **COUNT I: UNCONSCIONABLE CONTRACT**

### **The waiver is unenforceable, therefore does not bar contract claims.**

21. Defendants' argument regarding the waiver was addressed in detail in Plaintiffs' response to the original motion to dismiss [Dkt #28, ¶¶ 25-33]. The instant motion presents no rebuttal.

22. Briefly, the waiver in question is an adhesion contract, which all candidates are required to sign when enrolling in the ECFVG program [Defendants' Motion Exhibit 1]. The language of the waiver is entirely one-sided, releasing and exonerating the AVMA and ECFVG from any and all claims arising from or related to any part of the certification process, thus allowing AVMA/ECFVG to perform any act of negligence or injustice without consequence. Such a mandatory waiver which renders one party to a contract entirely powerless, makes for gross inequality of bargaining power, and conflicts with public policy. Therefore, this waiver should not be enforced.

23. In Illinois waivers are considered contracts and are heavily construed against the drafter. "More recently, we observed that exculpatory clauses are not favored and must be strictly construed against the benefitting party, particularly one who drafted the release." *Harris v. Walker*, 119 Ill.2d 542, 548, 116 Ill.Dec. 702, 519 N.E.2d 917, 919 (1988).

24. "…a liability release may be invalid " 'where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff.'.., (uneven bargaining position "may arise [(1)] from the defendant's monopoly of a particular field of service, [(2)] from the generality of use of contract clauses insisting upon assumption of risk by all those engaged in such a field, so that the plaintiff has no alternative possibility of obtaining the service without the clause; or [(3)] it may arise from the exigencies of the needs of the plaintiff himself, which leave him no reasonable alternative to the acceptance of the offered terms")." Our research shows several sister states considering exculpatory clauses between an educator and a student have held such clauses are categorically void as matter of public policy. See Wagenblast v. Odessa School District No. 105–157–166J, 110 Wash.2d 845, 758 P.2d 968, 971–73 (Wash.1988)" *Spears v. Association of Illinois Electric Cooperatives,* 2013 IL App (4th) 120289.

25. The cases cited in the Defendant's motion are not applicable in the instant action. As stated in *Sanjuan v. American Bd. of Psychiatry & Neurology,* 40 F.3d 247, 1994 U.S. App. LEXIS 32958 (7th Cir. Nov. 21, 1994). "Illinois does not permit professional associations full sway over admissions criteria if membership is an "economic necessity." Treister v. American Academy of Orthopaedic Surgeons, 78 Ill.App.3d 746, 755, 33 Ill. Dec. 501, 507, 396 N.E.2d 1225, 1231 (1st Dist.1979)."

26. It is erroneous to compare the board certifications in the cases Defendant cited with ECFVG certification. None of the certifications/memberships in these cases are necessary to practice in those fields, but are merely continuing education to demonstrate proficiency in a

7

specialty. They are not an *economic necessity* as is the ECFVG certification, without which a foreign graduate cannot get licensed.

### Contract falls under both UCC and Common Law

27. The Unconscionability of this contract is grounded in common law, and not limited to statute. The FAC describes specific factual allegations that are actionable under **both** UCC and common law. Paragraph 56 pleads the elements of such a claim.

28. As stated in paragraph 54 of the FAC: "ECFVG engages in a contract with each candidate for a service in exchange for money, to evaluate their professional knowledge and skills *for a certificate* making them eligible to apply for US licensure." Such certificate is a "good" under the UCC. As stated in the AVMA website, "Once earned, an ECFVG certificate, like the veterinary diploma itself, is valid for life."   While the contract includes a number of services that ultimately lead to the certificate, the major element of this contract is the certificate, without which the services would be meaningless.

29. A professional license, which is a document conveying the right to practice in a given profession, is widely accepted to be a property interest. The ECFVG certificate which is a pre-requisite for such licensure is a property interest in the same principle.  Furthermore, ECFVG certificate alone qualifies candidates for certain types of employment so it has economic value independent of the license.

30. The Federal Rules of Civil Procedure do not require code pleading, as stated in a number of legal precedents [¶ 17].  Plaintiffs believe that the unconscionable contract claim was adequately pled with factual allegations.

**Breach of Contract**

31. Documents produced by Defendant after the filing of the FAC demonstrate that AVMA breached their own written policies and procedures. Specifically, this new evidence shows that the failing grade in question was erroneous; it was conferred in violation of the Anesthesia MOA and Examiners' Instructions; and that ECFVG officials took intentional steps to uphold the failing grade and conceal critical facts from Dr. Gunawardana on several occasions.

32. As described in paragraphs 9 and 14a of Plaintiffs' response to Defendants' motion for protective order [Dkt. #66], this evidence corroborates Plaintiffs' position on this key factual dispute, and gives rise to the additional claim of Breach of Contract.

33. Additionally, Defendants' answers to Admission Requests #35-38 state that their policies do allow ECFVG candidates to receive their own exam materials. This fact is corroborated by other evidence recently received in discovery. However, ECFVG officials denied Plaintiff's requests for her exam materials citing "policy" [FAC Exhibit 1, page 8]. During discovery Defendant withheld production and moved for protective orders for the same material, again not backed by their policy.  This is further evidence for breach of contract.

34.  In the event the Court chooses not to grant default judgment as requested, Plaintiffs respectfully request leave to amend Count I to include breach of contract and to specify the common law claim of unconscionability.

## COUNT II: TITLE VII OF THE CIVIL RGHTS ACT

35. Plaintiff's Title VII claims arise not from a direct employer employee relationship, but from AVMA's actions of barring Plaintiff entry into the profession in their capacity as a labor union and an employment agency.

36. As described in paragraphs 60-65 of the FAC, AVMA functions as a labor organization that protects the interests of all veterinarians, and harmed Dr. Gunawardana by failing to protect her interests and actively barring her entry into the profession in a discriminatory and unethical manner. Defendant's motion does not rebut this claim.

37. Paragraphs 59-60 of the FAC clearly state how AVMA qualifies as both an employment agency and a labor organization. The motion does not dispute the latter, and regarding the former it only claims, "nonprofit professional certification organizations such as the AVMA do not constitute "employment agencies" under Title VII". However, the AVMA is not at all equivalent to the stand-alone certification organizations in the two cases Defendant cited. AVMA's functions are not limited to providing certification, far from it. ECFVG certification is only a small part of its functions, while AVMA routinely accredits veterinary schools; supports research; publishes the JAVMA; maintains an employment website to assist veterinarians with employment; lobbies congress for the field and market; sells liability insurance; advocates for veterinarians; secures grant funding for veterinarians; and supports hospitals, food and agriculture etc. Thus, unlike any stand-alone certification organization, AVMA meets the criteria of an employment agency and a labor organization within the meaning of the Act.

38. As the "Collective voice for the veterinary profession", AVMA purports to protect, promote and advance the needs of *all* veterinarians. AVMA's Core values state: "We represent and support a diverse community of veterinarians with unique perspectives." As stated in their diversity statement: "The AVMA is committed to diversity and inclusion in all aspects of the profession of veterinary medicine". Thus, the AVMA has an implied duty to Dr. Gunawardana to protect her professional interests.

39. In direct violation of its own stated polices and Title VII, AVMA follows discriminatory policies and practices with the express intent of limiting the entry of minorities and foreign

nationals into the workforce, resulting in a disparate impact as evident by job statistics. [Dkt # 63, ¶¶ 60-65]

40. In addition to such discrimination etched in AVMA's policies and practices, recently discovered evidence shows direct discriminatory actions taken against Dr. Gunawardana, which violate AVMA's own stated procedures.

41. The instant motion does not dispute the fact that Plaintiff filed the original complaint within the required 90-day timeframe, nor does it dispute that Defendant received the Right to Sue letter from the EEOC in November 2018, with another copy of it attached to Plaintiffs' response to the Defendants' first motion to dismiss [Dkt. #27-1]. Here they request dismissal based solely on the technicality that a copy of said letter [which Defendant had previously received] was not attached to the FAC.

42. Defendants' position that "A court may dismiss a complaint for failure to attach a notice of right to sue letter as an exhibit." is not supported by statute or the case law they cited. "Failing to attach a right-to-sue notice to the complaint isn't, by itself, a reason to dismiss someone's lawsuit, but without the notice, the court cannot determine whether the plaintiff filed this lawsuit within ninety days of when she received the notice, as the law allows." *Harris v. Kinseth Hosp. Home 2 Suites,* No. 18-cv-1707-pp at *3 (E.D. Wis. Dec. 30, 2019). Further, "The court also explained that the form the plaintiff had attached to the complaint—the Charge of Discrimination form—wasn't the same thing as a Notice of Right to Sue from the EEOC, and that the plaintiff need to file a copy of the Notice of Right to Sue, if she'd received one. Id. at 9." *Harris v. Kinseth Hosp. Home 2 Suites*, No. 18-cv-1707-pp at*1 (E.D. Wis. Dec. 30, 2019). The Plaintiff in that case was requested to file the notice with the court, which she failed to do. In the instant case Plaintiffs have previously filed this notice [Dkt. # 27-1] and AVMA was in possession of this notice since 2018. Defendants' continued focus on already resolved issues is additional evidence of intent to delay and harass.

**COUNT III: 42 U.S.C. § 1981**

43. The FAC clearly states that Defendants' practices involve race discrimination that goes above and beyond the national origin discrimination etched AVMA's written policies [¶ #68-69]. Indirect evidence of such race discrimination can be found in the ECFVG enrollment application that requires candidates to disclose specific information on their ethnicity and appearance, including color, height, weight, native language, and their citizenship at different stages of life. Direct evidence of such discrimination is in the disparate impact on the profession, as indicated by the 6.8% non-white veterinarians in the US, the smallest representation in any professional field.

44. Importantly, evidence discovered after the filing of the FAC shows specific discrimination aimed at Dr. Gunawardana that not only goes above and beyond AVMA's written policies, but also violates ECFVG stated procedures such as the MOA. Since the group of AVMA officials who committed such discrimination had no prior relationship with Dr. Gunawardana, singling her out from other ECFVG candidates strongly suggests a racial motivation.

45. For foreign veterinary graduates, ECFVG certification is a direct prerequisite to US licensure. Unfair denial of said certificate prevents Dr. Gunawardana from receiving her license to practice in the US, which is the most important contract in this profession. Defendants' actions prevent Plaintiff from entering numerous other contracts, including any employment contract as a licensed veterinarian in the US, certain positions which accept the ECFVG certification in place of licensure, and enrolling in educational/training programs limited to ECFVG certificate holders or licensed veterinarians in the US.

46. Defendants also prevented Plaintiff from enforcing the contract that existed between her and the ECFVG. They first breached this contract by granting and upholding the erroneous failing grade in violation of their own stated procedures. Plaintiff attempted to enforce the contract through the ECFVG appeal process. Defendant prevented her from enforcing the contract first by

withholding evidence [once again in violation of stated procedures], then by denying her appeals without a fair and unbiased evaluation [FAC ¶¶ 15-18, 24-26].

47. These facts are described in detail in the Statement of Claim and Factual Background sections in the FAC, and do not need to be repeated under each count.

## COUNT IV: 14<u>TH</u> AMENDMENT

48. The instant motion merely repeats the same points presented in Defendant's original motion to dismiss. All these points were rebutted in detail both in the FAC and in Plaintiffs' response to Defendants' original motion to dismiss.

49. Briefly: A private organization becomes a state actor through the performance of a public function traditionally performed by the state; by the government's influence, encouragement or coercion of the performance of an act; or through sufficient entwinement with the state. The AVMA qualifies as a state actor through all three criteria, as described in detail in Dkts. #63[pages 22-28] and #28[pages 15-19]. Each point Defendant presented through case law was specifically refuted in Plaintiffs' previous response [Dkt. #28, ¶¶ 63-73]. The instant motion does not rebut, or even mention, these arguments.

50. Here, Defendant claims only that the AVMA is not a state actor because licenses are issued by states, while intentionally omitting ECFVG's relationship to the state licensing boards. ***The ECFVG was formed at the request of the state boards,*** as repeatedly stated in AVMA's own publications recently produced in discovery. Thus, state governments have clearly "influenced, encouraged, and/or coerced" not only the performance but the very existence of the ECFVG, making them a state actor beyond doubt. The motion does not address AVMA's excessive entwinement with the state boards either.

51. Defendant further claims that "the expectation of a professional license is not a property interest", and misrepresent *Elias*. This issue was refuted in detail in Dkt. #28, paragraphs #68-73. The instant motion provides no counter.

52. Briefly, The candidate in *Elias* did not have a property interest simply because he was not a medical graduate to begin with, did not meet the criteria for the ECFMG program [thus ineligible to take step 1 of USMLE] and could not have received a medical license either in the US or in his home country. Dr. Gunawardana is not only a veterinary graduate but holds a license to practice in Sri Lanka. Furthermore, Courts have ruled that an ***applicant's*** right to equal protection was violated when she was treated differently from other applicants. *Linton v. Missouri Veterinary Medical Board.,* 988 S.W.2d 513 (Mo.banc 1999).

53. Veterinary licensure, the document conveying the right to practice veterinary medicine, is widely accepted to be a property interest. The ECFVG certificate which is a pre-requisite for such licensure is a property interest in the same principle. Furthermore, ECFVG certification alone qualifies candidates for certain types of employment so it has economic value independent of the license.

54. Thus, the claims under Count IV stand unopposed.

**COUNT V: SHERMAN ANTITRUST ACT**

55. Count V [FAC pages 28-32] shows evidence of a conspiracy between the AVMA and several other organizations; how such conspiracy restricts the veterinary profession against specific groups; and how such restriction caused injury to Dr. Gunawardana [who is part of all the restricted groups] by being unfairly barred from practice in the profession, and damaged the market in general. Count IX [pages 36-38] shows how such restriction caused direct injury to Mr. Seely as a consumer. The instant motion does not rebut these facts.

56. The result of such market restriction is not just a decrease in the quality of veterinary services, but also ***unfair price increases*** and ***lack of access to affordable veterinary care*** for many consumers. This is clearly stated in detail in Count IX [¶¶ 107,108] and the Statement of Claim [¶¶ 5,6], and alleged in count V as well [¶¶ 93,95].

57. Following the erroneous statement "Counts V and IX are devoid of allegations regarding what contract or agreement the AVMA holds, an unreasonable restraint of trade in the veterinarian field, and a concrete injury.", the instant motion goes on to repeat verbatim the paragraphs from Defendants' previous motion, without rebutting the specific points presented in the FAC.

58. Contrary to Defendants' implication, the PAVE program is not independent of the AVMA. Candidates must be accepted by, and attend clinical rotations at, an ***AVMA accredited school***, and they must pass the clinical evaluation exams there. PAVE is not recognized in many states including Missouri; is administered by the AAVSB whose director is an AVMA member; is exorbitantly expensive; and there are no statistics available on the numbers of those who take it or complete it. Thus, PAVE is neither a practical or viable alternative to the ECFVG, nor is it independent of the AVMA. [FAC ¶¶ 47,48]

59. Importantly, the PAVE program puts no dent in AVMA's monopoly as the sole authority in the veterinary market. All veterinary education programs/institutions have to get accredited by AVMA/COE every few years [at great expense], and all candidates from non-accredited institutions have to first obtain either the ECFVG certification directly administered by AVMA, or the PAVE certification which is also under the ultimate control of AVMA. Any person who wishes to practice veterinary medicine in the US has to go through AVMA one way or another.

60. The motion erroneously implies that the allegations in Counts V and IX are about monopoly in foreign certification [which AVMA still controls]. This is about monopoly in the ***whole*** veterinary field, which Defendants do not, and cannot, dispute.

### COUNT VI: 42 U.S.C. § 1985(3)

61. Pages 32-34 [¶¶ 96-99] of the FAC clearly state how the facts of this case meet each element of a claim under 42 U.S.C. 1985(3). Defendant's motion does not address any of it, merely repeating verbatim the argument from their original motion that "a corporation cannot conspire with itself". The rebuttals to said argument presented in Plaintiffs' response [Dkt. #28] or in the FAC are not addressed.

62. Plaintiffs' statement that the AVMA should not be shielded by the intracorporate conspiracy doctrine was not a "blind conclusion" as Defendant claims, but was backed by evidence and authority [Dkt. #28; ¶¶ 44-46].

63. Importantly, Count VI does not rely solely on the inapplicability of the intracorporate conspiracy doctrine. It points to specific evidence of a ***conspiracy between the AVMA and outside entities*** as described previously under count V of the FAC, and goes on to plead all elements of a claim under 42 U.S.C. 1985(3). The motion presents no counter.

64. Thus, Count VI remains unopposed, and should stand.

### COUNT VII: AMERICANS WITH DISABILITIES ACT

65. There is no statute of limitations as this is a continued violation. While Plaintiff's injury started in October 2016, the Defendant's ADA violations are etched in their policies. ECFVG would not provide disability accommodations unless requested over 90 days before the scheduled exam, disregarding all possible injuries/disabilities that could occur within 90 days. To compound this, candidates cannot reschedule without losing all exam fees. This is in stark contrast to USMLE which has a very flexible rescheduling policy.

66. The ADA violations etched in Defendants' written policies are continuing regardless of whether Dr. Gunawardana retakes the CPE. Furthermore, Plaintiff's consistent position was that she is not willing to retake the exam *in its current form,* with all its violations of civil rights and equal protections, and complete lack of transparency or oversight. "Because Title III authorizes plaintiffs to seek injunctive relief for actual or threatened violations of the statute, the court concluded that the existence of unlawful barriers to access is a continuing violation of the statute that continues to impose a fresh injury." *Scherr v. Marriott International,* Inc.,F.3d, 2013 WL 57857 (7th Cir., Jan. 7, 2013). In that case, the plaintiff stated she would return to Defendant's facilities once the violations were corrected. Her claims were considered not time barred.

67. Even if a statute of limitation were to apply, the four-year catch all federal statute can apply under the ADAAA, and courts usually do not determine these matters at this stage. "Therefore, the question of whether a claim is time-barred usually cannot be resolved on a motion to dismiss, except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.*" *Latson v. Clarke,* No. 1:16CV00039 (W.D. Va. July 21, 2017).

### DAVID SEELY'S STANDING

68. Plaintiff Seely's standing was addressed in detail in the Response to the Court's Show Cause Order [Dkt. #17], in Plaintiffs' response to the original motion to dismiss [Dkt. #28, ¶¶ 17-23] and in the FAC [Dkt. #63, ¶¶ 6, 103-108]. The specific points presented therein are not rebutted in this motion.

69. Contrary to what Defendant implies, Mr. Seely's standing does not depend on his status as Dr. Gunawardana's husband. AVMA's monopoly in the veterinary field has caused direct injury to Mr. Seely as a consumer of veterinary services, through lack of access to affordable veterinary care throughout his life. As stated in the same paragraph Defendant cited: "Defendants' policies

and practices adversely affected Mr. Seely as a patient and consumer, through increased cost of veterinary and medical services, and through lack of access to services from a diverse group of qualified professionals." [Dkt. #63, ¶ 6]

70. AVMA is the gate-keeper with sole authority on who enters the veterinary profession in the US. AVMA also consists of active market players with a personal stake in controlling the numbers entering the market, thus keeping prices high [an obvious conflict of interest]. This practice has damaged Mr. Seely who has owned and rescued animals from a young age to this day. Lack of access to affordable veterinary care has been a constant problem in poor communities such as the one he grew up in. [Dkt. #17, ¶¶ 4,12-14]

71. As a disabled person suffering from numerous health problems, Mr. Seely is a consumer of many pharmaceuticals and medical technologies, the development of which involves the skills of veterinary research professionals, and requires lab animal veterinary services. Market control by AVMA hikes up the prices of all these services used by Mr. Seely as a patient and consumer, and deprives him of the opportunity to receive services from a wide and diverse group of qualified professionals. *Trafficante v. Metropolitan Life Ins. Co.* C-70 1754 ( N.D. Cal. )

72. In addition to his statutory standing, Mr. Seely also has jurisdictional standing through the time, effort and resources spent in the advancement of his wife's career [Dkt. #17, ¶¶ 2,3,5, 8-11]. While generally spouses or relatives cannot be a party to contractual suits where they are not parties, there are exceptions. "This court held that because of the economic effect on her (a joint bank account and the level of spousal support), she was asserting her own rights and thus had standing. Id. at 973." *International Ass'n of Firefighters v. City of Ferguson,* 283 F.3d 969 (8th Cir. 2002).

73. Plaintiffs did not allege a violation of the ADA's testing provision for Mr. Seely. His ADA rights were violated through the physical and financial damage he suffered due to AVMA's

actions, which are not limited to denial of his wife's accommodation request. As stated in paragraph 105 of the FAC "Had the ECFVG allowed candidates to reschedule without losing all fees [as the USMLE does] he would not have suffered this inconvenience and damage." Defendant admits that their policies prohibit candidates from rescheduling exams without losing all fees, even in case of medical or family emergencies. This policy in itself violates disability rights of candidates' family members.

## CONCLUSION AND RELIEF

74. In summary, the instant motion presents only four points not previously presented in Defendant's original motion to dismiss: That the FAC did not include a copy of the Right to Sue letter; that the UCC applies to transactions in goods; that Mr. Seely did not request a testing accommodation; and that "…a decrease in the quality of the veterinary profession is insufficient to establish an antitrust claim". These points could have been presented in a single page, and rebutted in 1-2 pages, requiring minimal time. By re-submitting their previous motion memorandum with the new points buried in it, Defendant forced Plaintiffs to re-address resolved issues and use up valuable time from the next steps of the suit, not to mention wasting Court's time.

75. As described in the previous sections, the FAC meets the Statement of a Claim requirement under both Rule 8(a) and the *Twombly/ Iqbal* standard. In addition to lacking in substance, the instant motion was filed in violation of Rule 12 in several ways. Defendants' conduct throughout this suit, including filing this motion at this particular time, seems to be an intentional attempt to prejudice Plaintiffs.

76. Wherefore, Plaintiffs pray the Honorable Court to strike this motion, followed by either a default judgment, or leave to file a motion for default judgment.

77. In the alternative, Plaintiffs pray the Court to deny this motion in its entirety, and grant leave to amend Count I to include Breach of Contract [based on evidence discovered after the filing of the FAC] and to correct any other deficiencies as the Court deems fit.

78. Plaintiffs further request that all costs be taxed to the Defendant.

August 31, 2020

> Respectfully Submitted,
> /s/Dr. Subhadra Gunawardana
> /s/David Seely, With Consent
> Plaintiffs,
> 4308 Marion Garden Ln
> Florissant, MO 63034
> 615-674-8461; 615-423-8851
> subhadra.gunawardana@wustl.edu
> david-seely@live.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded by way of electronic filing on the Court's ECF notice list, on August 31, 2020.

> /s/Dr. Subhadra Gunawardana
> /s/David Seely, With Consent